MAU-ZAU-MAU-NE-KAH vs. THE UNITED STATES.

1. INDICTMENT — CERTAINTY AS TO TIME. — An indictment must state a day certain when the offense was committed, and it is not sufficient to charge that it was committed "on or about" a certain day.
2. NAME OF COURT. — There are no *circuit courts* in the Territory, and a prosecution instituted in a *district* court should not be styled as being had in the *circuit* court.
3. DESIGNATION OF GRAND JURY. — An indictment must show that the jurors of the grand jury were impaneled for the proper county and not merely "for the Territory."
4. ARREST OF JUDGMENT. — Any matter that would be good on a general demurrer to an indictment is equally available in arrest of judgment.

ERROR to the District Court for *Brown* County.

The plaintiff in error, an Indian of the Winnebago tribe, was indicted, tried and convicted in the district court for Brown county, at the May term, 1837, of the murder of Pierre Paquette.*   In the caption of the indictment it is stated that it was found in "the *district court* sitting *as a circuit court* of the Territory of Wisconsin, begun and holden at Depere within and for the county of Brown," and states "that the jurors *for said Territory* (and in behalf of the United States, upon their oath), present, that *Mau-zau-mau-ne-kah*, of the tribe of Winnebago Indians, on the eastern bank of the Wisconsin river, in the vicinity of Fort Winnebago (being on lands owned by the tribe of the Menomonee nation of Indians, and under the sole and exclusive jurisdiction of the United States aforesaid), in the Territory aforesaid,

---

* Pierre Paquette was well known at an early day in Wisconsin as the interpreter of the Winnebago tribe of Indians, and acted for them as such in making treaties.

*Indian,* not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, *on or about the eighteenth day* of October, in the year of our Lord one thousand eight hundred and thirty-six, with force and arms, at and on the eastern bank of the Wisconsin river, in the vicinity of Fort Winnebago and Territory aforesaid, in and upon the body of one Pierre Paquette, in the peace of the said United States then and there being, feloniously, willfully and of his malice aforethought, did make an assault; and that the said *Mau-zau-mau-ne-kah,* with a certain rifle of the value of four dollars, then and there charged with gunpowder and one leaden bullet, which said rifle he, the said *Mau-zau-mau-ne-kah,* in both his hands then and there had and held, then and there feloniously, willfully and of his malice aforethought, did discharge, and shoot off to, against and upon the said Pierre Paquette; and that the said *Mau-zau-mau-ne-kah,* with the leaden bullet aforesaid, out of the rifle aforesaid, then and there, by force of his gunpowder aforesaid, by the said *Mau-zau-mau-ne-kah* discharged and shot off as aforesaid, then and there feloniously, willfully and of his malice aforethought did strike, penetrate and wound the said Pierre Paquette, in and upon the right side of the breast of him, the said Pierre Paquette, giving to him, the said Pierre Paquette, then and there with the leaden bullet aforesaid, so as aforesaid discharged and shot out of his rifle aforesaid by the said *Mau-zau-mau-ne-kah,* in and upon the right side of the breast of him, the said Pierre Paquette, one mortal wound of the depth of five inches and of the breadth of half an inch, of which he, the said Pierre Paquette, then and there instantly died. And so the jurors aforesaid, upon their oath aforesaid, do say that the said *Mau-zau-mau-ne-kah,* him, the said Pierre Paquette, in the manner and by the means aforesaid, feloniously, willfully and of his malice aforethought did kill and murder, against the peace and dignity of the

said United States, and contrary to the statute in such case made and provided."

The prisoner pleaded not guilty, and, after a verdict of guilty was rendered against him, he moved in arrest of judgment for reasons stated in the opinion of the court. The district court overruled the motion as to all the points made, except the first, and, after argument and further consideration, overruled that also, the district judge, Hon. WILLIAM C. FRAZER, delivering the following opinion thereon: "The court, after hearing an argument in support of the first reason assigned by the prisoner's counsel, in arrest of judgment upon the verdict against him, have, after the most mature consideration, overruled the same.

The time, under the English law, of giving the mortal wound or stroke is considered necessary to show when the forfeiture of goods and lands attaches; and, also, in case a person should, after a wound or stroke, survive more than a year and a day, so as to have a definite period to count from, in order to acquit or convict, as the case might turn out upon the evidence. If the person died within the year and the day, the indictment would stand; and, upon the other hand, it would fall to the ground. Now, by the British decisions, proof of the time of the stroke or wound being given, either before or after the time laid in the indictment, and before indictment found, is held sufficient to authorize a conviction; and, also, by the same decisions, forfeiture attaches, not from the day laid in the indictment, but from the time of the actual commission of an offense, which might lead to immediate or consequent death, although a different day from that laid in the indictment. And, also, by the same decisions, the year and a day within which a person must die, from a stroke or wound given, to authorize the presumption of death from such cause, must run, not from the time laid in the indictment, but from the actual time of the commission of the offense; so that if an offense were laid to have been committed upon the 18th day of

October, 1836, and it should turn out upon trial that the offense was committed upon the 1st day of October, 1836, and the person died upon the 3d of October, 1837, the whole proceeding would fall, the court computing the time, not from that laid in the indictment, but from that actually established by the evidence.

Thus, it seems that what at first were the reasons for the rule have been departed from by the English judges themselves—*Cessante ratione, cessat ipsa lex.*

We have no occasion for a strict adherence to the rule in the United States, as we have no felonious forfeitures; and the rule of the year and a day, as to the reckoning of time, is the same with us as in England. That which was once with the English judges, *in favorem vitæ*, matter of substance, has become matter of form, inasmuch as nothing is allowed to appear on the trial but the real truth of the transaction, although it may vary from the time of the commission of the offense laid in the indictment.

Enough appears upon the face of this indictment to show when the offense was committed, and the testimony corresponds therewith — the *allegata* and *probata* satisfied the jury, and that is enough for this court.

Non-essential technicalities ought, when trifling in themselves, never to defeat the great ends and purposes of criminal justice. Our code is a humane one, and the prisoner has had a most fair and impartial trial, by a most intelligent jury, who, in the absence of the prisoner's counsel, upon the rendition of their verdict, were ordered by the court to be polled, and they sanctioned the same by their several and solemn assents.

If our constitutional provision as to a man being twice put in jeopardy were out of the question, and this motion to prevail, and judgment be entered for the defendant, and he be discharged, could he ever be convicted for this offense again; I say no. Upon the plea of *autre fois acquit*, enough would appear from the time as laid in the indictment, descriptive of the wound, *et cetera*, to bar

and save him from such second prosecution, or any other, in all time to come. The English judges regret these now technical absurdities. Where *time, the exact time as laid,* is necessary to be proven, in order to convict, I say adhere to it, and depart not from it. It is then matter of substance, *to be proved as laid.* Not so in this case, and others like it, when it is *mere form,* no longer necessary to be proven as laid, for the reasons before mentioned.

This record shall be sent to the President of the United States, himself a profound and great jurist; and who also has, as his legal adviser, one of the brightest ornaments of the American bar, who will inspect all that has been done, and if this court has erred, it will *be happy,* yea, truly happy, to have it announced by a pardon granted to the prisoner."

The prisoner was sentenced to be executed on the first day of September, 1837, and the case came before this court by writ of error.

*J. S. Horner,* for plaintiff in error.

*Moses M. Strong,* United States attorney, for defendant in error.

IRVIN, J.    At the May term, 1837, of the district court for Brown county, *Mau-zau-mau-ne-kah* (an Indian of the Winnebago tribe) was indicted for the murder of Pierre Paquette, and, at the same term was tried and convicted and judgment pronounced; to stay and reverse which a writ of error was sued out, and the cause brought up to this court.

After verdict and before judgment the prisoner made a motion in arrest of judgment upon the following grounds:

1. Because the time laid in said indictment when said offense was committed is not laid with sufficient and legal certainty.

2. Because said indictment alleges said offense charged in said indictment to have been committed on lands owned by the tribe of the Menomonee nation of Indians,

and under the sole and exclusive jurisdiction of the United States.

3. Because said indictment alleges "the jurors" to be "for said Territory," and does not allege them to be jurors of either Brown county, or of the counties composing the third judicial district.

4. Because said indictment does not truly state the name and style of this court.

5. The said indictment does not allege said offense to have been committed against a statute or act of congress; which were all overruled by the court.

In the order of the indictment it is best to notice the fourth objection first. By the organic law the proper style of the court would be the *district court*, while in the indictment it is styled "a circuit court of the said Territory of Wisconsin." Now, as there is no such court as a circuit court of the Territory of Wisconsin, it occurs to this court that the objection is a good one, as it is a principle of law that such a degree of certainty should be observed as to leave no difficulty in the way of the accused in the event of an acquittal and subsequent prosecution, in showing a former acquittal.

By the third objection it is further urged against the indictment that it "alleges the jurors to be for said Territory;" and this objection is not without its weight, as the jurors must be of the county, and not from any or all parts of the Territory.

The first objection, "because the time laid in said indictment when said offense was committed is not laid with sufficient and legal certainty," is well taken. The indictment charges the offense to have been committed "*on or about* the 18th day of October." etc., while it is held that the time and place must be added to every material fact in the indictment (*Rex v. Holland*, 5 Term R. 607; *Rex v. Aylett*, 1 id. 69 ; Stand. 95 *a; Rex v. Haynes*, 4 M. & S. 24) ; that is, every material fact stated in an indictment must be alleged to have been done on a *particular* day and at a particular place.

Vol. I. — 9

"A day *certain* must be stated." 2 Hawk. 25, § 77. "Any want of sufficient certainty in the indictment respecting the time, place or offense, which is material to support the charge, as the circumstance of no offense being charged will cause the judgment to be arrested." 1 Chit. Cr. Law, 539. "Any objection which would have been fatal on demurrer will be equally so on arrest of judgment, and it is therefore usually reserved till this time in order to obtain the chance of an acquittal." 1 id. 540.

The court is of opinion that the district court erred in overruling these objections, but did not err in overruling the second and fifth objections. The decision of the district court is therefore reversed and the judgment arrested, and the cause remanded to the said district court, that it may take such other and further steps therein as the law may require.