STATE of Wisconsin, Plaintiff-Respondent,

v.

Waylon PICOTTE, Defendant-Appellant.

Supreme Court

*No. 01–3063–CR. Oral argument December 6, 2002.—Decided May 16, 2003.*

2003 WI 42

(Also reported in 661 N.W.2d 381.)

250

For the defendant-appellant there were briefs by *John T. Wasielewski* and *Wasielewski & Erickson,* Milwaukee, and oral argument by *John T. Wasielewski.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This case comes before the court on certification by the court of appeals pursuant to Wis. Stat. (Rule) § 809.61 (1999–2000).[1] The circuit court for

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version of the statutes unless otherwise indicated.

Brown County, Peter J. Naze, Judge, entered a judgment of conviction for first-degree reckless homicide (Wis. Stat. § 940.02), party to a crime, against Waylon Picotte, the defendant. It also entered an order denying the defendant's postconviction motions.

¶ 2.    The issue presented by this case is whether the defendant's conviction for first-degree reckless homicide is barred because the victim did not die within a year and a day of the infliction of the fatal injuries.

¶ 3.    The defendant's postconviction motions asserted that his conviction of first-degree reckless homicide was barred because it violated the common-law year-and-a-day rule, which establishes an irrebuttable presumption that death occurring more than one year and one day after an accused's injury-inflicting act was not caused by the accused.

¶ 4.    The circuit court denied the defendant's motions. The circuit court concluded that even if the year-and-a-day rule were part of the law of Wisconsin after adoption of the Wisconsin Constitution, the legislature eliminated the year-and-a-day rule by enacting Wis. Stat. § 939.74(2), authorizing a prosecution for violation of § 940.02 (proscribing first-degree reckless homicide) to be commenced at any time.[2]

¶ 5.    We disagree with the circuit court and hold that the defendant's conviction in this case is barred by

---

[2] Wisconsin Stat. § 939.74 reads, in relevant part, as follows: "Time limitations on prosecutions . . . (2) Notwithstanding that the time limitation under sub. (1) has expired: (a) A prosecution under ss. 940.01, 940.02, or 940.04 may be commenced at any time."

Wisconsin has had a criminal statute of limitations since 1849. Wis. Stat. ch. 146, § 2 (1849). A statute of limitations has thus always coexisted with the year-and-a-day rule in Wisconsin.

the common-law year-and-a-day rule. In order to reach this conclusion, we must address four successive questions of law that this court decides independent of the circuit court but benefiting from the circuit court's analysis. The four questions and this court's answers to them are as follows:

1.  Is the common-law year-and-a-day rule the law in Wisconsin? We agree with both the State and the defendant that the year-and-a-day rule has been the law of Wisconsin since statehood, preserved through Article XIV, Section 13 of the Wisconsin Constitution.

2.  If the year-and-a-day rule is the law in Wisconsin, does this court have the authority to abrogate the rule? This court has the authority to develop the common law and therefore may abrogate the year-and-a-day rule.

3.  If this court has the authority to abrogate the year-and-a-day rule, do sufficiently compelling reasons exist for this court to do so now? This court should abrogate a common-law rule when the rule becomes unsound. We conclude that the year-and-a-day rule is an archaic rule that no longer makes sense. Accordingly, the court abolishes the rule.

4.  Should the abrogation of the year-and-a-day rule apply to the defendant in the present case? The court may change or abrogate a common-law rule either retroactively or prospectively. We conclude that purely prospective abrogation of the year-and-a-day rule best serves the interests of justice. Thus, prosecutions for murder in which the conduct inflicting the death occurs after the date of this decision are permissible regardless of whether the victim dies more than

254

a year and a day after the infliction of the fatal injury. The prosecution for first-degree reckless homicide in the present case, however, remains subject to the year-and-a-day rule, and because the fatal injury in the present case was inflicted more than a year and a day before the death of the victim, the defendant's conviction for first-degree reckless homicide is reversed.

## I

¶ 6.   The relevant undisputed facts of this case are as follows. Waylon J. Picotte, the defendant, was involved, along with another, in a fight outside of a Green Bay bar on September 26, 1996. During the fight, John Jackson was struck in the face and hit his head on a brick wall. Jackson suffered brain damage that left him in a coma. The defendant was charged with aggravated battery and substantial battery on October 21, 1996.[3] He pled guilty and was sentenced to 15 years in prison.[4]

¶ 7.   More than two years later, on June 8, 1999, Jackson died from complications arising from the injuries sustained in the fight. The defendant was then charged with first-degree reckless homicide, party to a crime, in violation of Wis. Stat. §§ 940.02(1) and 939.05.[5] After a jury trial, the defendant was convicted and sentenced to 30 years in prison.

---

[3] The substantial battery charge was based upon injuries sustained by another person involved in the fight. Neither of the battery charges is at issue in the present case.

[4] The combined sentence for both battery charges was 15 years.

[5] Wisconsin Stat. § 940.02(1) reads: "Whoever recklessly causes the death of another human being under circumstances which show utter disregard for human life is guilty of a class B felony."

¶ 8.   The defendant filed postconviction motions asserting, among other issues, that his prosecution and conviction for first-degree reckless homicide violated the common-law year-and-a-day rule.[6] The circuit court affirmed the conviction and the court of appeals certified the issues relating to the year-and-a-day rule for review by this court.

## II

█

¶ 9.   We address first whether the year-and-a-day rule has been the common-law rule in Wisconsin since statehood. We agree with both the State and the defendant that the year-and-a-day rule has been the law of Wisconsin since statehood, preserved through Article XIV, Section 13 of the Wisconsin Constitution.

¶ 10.   Article XIV, Section 13 of the Wisconsin Constitution reads as follows:

Common law continued in force. Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall

---

Wisconsin Stat. § 939.05 reads:

Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

[6] In addition to raising the year-and-a-day common-law rule, the defendant argued that the circuit court erred by not instructing the jury on the lesser-included offense of aggravated battery. He also argued, in the alternative, that he deserved a sentence modification. Because of our holding, we need not reach these additional issues.

be and continue part of the law of this state until altered or suspended by the legislature.

Decisions of this court make clear that Article XIV, Section 13 specifically incorporates the common law of England as it existed in 1776 into the law of this state.[7]

¶ 11. The year-and-a-day rule is a common-law criminal rule of causation that dates back to thirteenth-century England.[8] According to the rule, no homicide is committed unless the victim dies within a year and a day after the injury is inflicted, for if the victim dies more than one year and a day from the injury it is "conclusively presumed that the injury did not cause the death."[9] The year-and-a-day rule was plainly part of

---

[7] *See, e.g., State v. Hobson*, 218 Wis. 2d 350, 577 N.W.2d 825 (1998) (Article XIV, Section 13 preserves the English common law in the condition in which it existed at the time of the American Revolution until modified or abrogated); *Davison v. St. Paul Fire & Marine Ins. Co.*, 75 Wis. 2d 190, 248 N.W.2d 433 (1977) (the common law to which Article XIV, Section 13 applies has consistently been defined as the law arising from English court decisions rendered prior to the Revolutionary War).

[8] *United States v. Jackson*, 528 A.2d 1211, 1214 (D.C. 1987); *State v. Ruesga*, 619 N.W.2d 377, 380 (Iowa 2000); *People v. Stevenson*, 331 N.W.2d 143, 145 (Mich. 1982); *State v. Vance*, 403 S.E.2d 495, 498 (N.C. 1991).

[9] Charles E. Torcia, 2 *Wharton's Criminal Law* § 118, at 151–52 (15th ed. 1994).

For an historical analysis of the evolution of the year-and-a-day rule, see Donald E. Walther, *Taming a Phoenix: The Year-and-a-Day Rule in Federal Prosecutions for Murder,* 59 U. Chi. L. Rev. 1337 (1992).

English common law at the time of the American Revolution,[10] and was therefore the law in Wisconsin at statehood.[11]

¶ 12. The circuit court ruled that while the year-and-a-day rule may have been the law in Wisconsin, the legislature abrogated the common-law rule when it enacted Wis. Stat. § 939.74(2). We agree with both the State and the defendant that the circuit court's ruling is erroneous. Section 939.74(2) eliminates any statute of limitations for a prosecution for first-degree reckless homicide. It provides that a prosecution under § 940.02 "may be commenced at any time." A statute of limitations sets the time within which a prosecution must be commenced after the crime is completed. In contrast, the year-and-a-day rule is a substantive principle of criminal law defining when a murder has been committed. "There is no question that the year-and-a-day rule has long been recognized in the common law as substantive legal principle."[12] In adopting § 939.74(2), the legislature did not act to alter or suspend the year-and-a-day rule.

¶ 13. In fact, legislative history relating to the Wisconsin Criminal Code indicates that the year-and-a-day rule has been and remains to this day a part of the common law of this state. The 1953 revision of the

---

[10] *See, e.g., Jackson,* 528 A.2d at 1214.

[11] The rule apparently has never been discussed in Wisconsin case law except in a territorial case. *See Mau-zau-mau-ne-kah v. United States,* 1 Pin. 124 (Wis. Terr. 1841).

[12] *United States v. Chase,* 18 F.3d 1166, 1172 (4th Cir. 1994).

Wisconsin Criminal Code, which never went into effect, included the following provision, abolishing the year-and-a-day rule.[13]

> 339.15 YEAR AND A DAY RULE ABOLISHED. In a prosecution for homicide the state must prove beyond a reasonable doubt the causal relation between the homicidal act and death, but shall not be required to prove that death occurred within a year and a day of such act.[14]

¶ 14. The very fact that the drafters included this provision is strong evidence that the legislature understood the year-and-a-day rule to be part of the common law of Wisconsin. Assistant Attorney General William Platz, one of the architects of both the 1953 and the 1955 versions of the criminal code, explained the removal of that provision from the code as a policy decision to leave the year-and-a-day rule in effect for Wisconsin.

> Another section [of the 1953 version of the criminal code] deleted by the committee would have abolished

---

[13] It was agreed that the 1953 version of the criminal code, including the provision abolishing the year-and-a-day rule, would go into effect in 1955 provided that the 1955 legislature voted to enact it. In the interim, a criminal code advisory committee was created to study the code and propose amendments. *See* § 282, ch. 623, Laws of 1953. One of the changes made by the committee was to remove the provision abolishing the year-and-a-day rule. The committee eventually created a "wholly new bill" that was enacted by the 1995 legislature. The 1955 act repealed the 1953 version of the criminal code. Thus, when the 1955 legislature enacted a criminal code, it did not include the provision abolishing the year-and-a-day rule. *See* William A. Platz, *The Criminal Code,* 1956 Wis. L. Rev. 350, 351–52.

[14] § 393.15, ch. 623, Laws of 1953.

the rule in homicide cases that death must occur within a year and a day from the felonious act of causing death. This was a policy decision by the committee and leaves the law as it has been.[15]

¶ 15. Thus, we conclude that the year-and-a-day rule was incorporated into the laws of Wisconsin by Article XIV, Section 13 of the Wisconsin Constitution and has not been altered or suspended by the legislature.

### III

¶ 16. We next consider whether this court has the authority to abrogate the year-and-a-day rule. The defendant asserts that Article XIV, Section 13 of the Wisconsin Constitution permits only the legislature to abrogate the common law and that this court does not have the authority to abrogate the common-law year-and-a-day rule. We disagree with the defendant. It is now well established that Article XIV, Section 13 did not usurp the traditional authority of the judiciary to develop the common law in Wisconsin.

¶ 17. This court addressed the effect of Article XIV, Section 13 on the judiciary's power to develop the common law in *State v. Esser*, 16 Wis. 2d 567, 115 N.W.2d 505 (1962). *Esser* was an appeal by the State, in which the State argued that the trial court had misinstructed the jury when it defined the defense of insanity in terms more broad than the common-law right-wrong test. The State argued that the "right—wrong definition was part of the common law in force in the territory of Wisconsin at the time our constitution was adopted,

---

[15] Platz, *supra* note 13, at 363 (citations omitted).

and the constitution [Article XIV, Section 13] prohibits the courts from changing it."[16]

¶ 18. The *Esser* decision rejected the State's construction of Article XIV, Section 13. The *Esser* court concluded that the Wisconsin Constitution vests this court, and other courts of this state, with "judicial powers,"[17] and that those judicial powers include the power to adapt and develop the common law through the judicial process.[18] In light of this power, the *Esser* decision concluded as follows that Article XIV, Section 13 cannot be read to bar this court from changing the common law:

> We conclude that the function of sec. 13, art. XIV, Wis. Const., was to provide for the continuity of the common law into the legal system of the state; expressly made subject to legislative change (in as drastic degree within the proper scope of legislative power as the legislature might see fit) but impliedly subject, because of the historical course of the development of the common law, to the process of continuing evolution under the judicial power.[19]

---

[16] *State v. Esser*, 16 Wis. 2d 567, 571, 115 N.W.2d 505 (1962). This argument is substantially similar to the argument raised by the defendant in the present case.

[17] Wis. Const. art. VII, § 2.

[18] The court stated in *Esser:*

Just as common law principles and rules have been recognized or developed in part through the judicial process, so the further adaptation and development of them must be part of the judicial power. The court may modify the common law, adopting such of its principles as are applicable and rejecting such others as are inapplicable.

*Esser*, 16 Wis. 2d at 581.

[19] *Esser*, 16 Wis. 2d at 584 (citations omitted).

¶ 19. This conclusion does not contravene the plain words of the constitutional provision because by definition, common law is law subject to continuing judicial development, including abrogation. "[I]nherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of the common law to new situations as the need arose."[20] Thus, properly construed, Article XIV, Section 13 of the Wisconsin Constitution does not codify English common law circa 1776, but rather preserves law that by historical understanding is subject to continuing evolution under the judicial power.[21]

¶ 20. Decisions of this court since *Esser* have reaffirmed this interpretation of Article XIV, Section 13.[22] Perhaps most relevant to the case at hand is *State v. Hobson,* 218 Wis. 2d 350, 577 N.W.2d 825 (1998), in

---

[20] *Bielski v. Schulze,* 16 Wis. 2d 1, 11 n.35, 114 N.W.2d 105 (1962).

[21] The defendant asserts that the discussion in *Esser* affirming the power of the judiciary to develop the common law is dicta, unnecessary to the holding of the case, and contrary to the language of Article XIV, Section 13. We agree with the State, however, that the conclusion reached by the *Esser* decision was essential to the issue in the case.

[22] *See, e.g., Sorensen v. Jarvis,* 119 Wis. 2d 627, 633, 350 N.W.2d 108 (1984) ("[A]s a part of our common law heritage, this court is free to amend the common law . . . ."); *Davison,* 75 Wis. 2d at 201 ("There is now no question that this court can . . . change existing common law principles."); *Garcia v. Hargrove,* 46 Wis. 2d 724, 731, 176 N.W.2d 566 (1970) ("The fact a common law rule was in effect when the Wisconsin Constitution was adopted does not mean this court is 'bound by the common law'

which this court affirmed its authority not only to alter but also to abrogate the common law when appropriate.

¶ 21. The *Hobson* decision addressed the viability of the common-law right to forcibly resist an unlawful arrest. After determining that the common-law right had been a part of the law of Wisconsin by virtue of Article XIV, Section 13 of the Wisconsin Constitution, the court went on to explain that this fact did not prevent the court from abrogating this right.[23] Indeed, based upon a thorough assessment of the issue, the court in *Hobson* did in fact abrogate the long-standing common-law rule, holding, "Wisconsin has recognized a privilege to forcibly resist an unlawful arrest, but based on public policy concerns, we hereby abrogate that privilege."[24] *Hobson* thus clearly demonstrates that the power to abrogate a common-law rule preserved by Article XIV, Section 13 is not limited to the legislature, but extends to the judiciary as well.

¶ 22. The defendant also argues that even if *Esser* is good law, this court may not abrogate the year-and-a-day rule in this case because the legislature has specifically refused to adopt such a change and thereby expressed a policy decision to maintain the rule as good law in Wisconsin. In light of this legislative history, the defendant asserts that abrogation of the common-law rule would be an improper exercise of judicial power by developing the law in contravention of the legislative policy.

and unable to change the law when it no longer meets the economic and social needs of society.").

[23] *Hobson,* 218 Wis. 2d at 370 ("We agree with the State that this court may adopt or refuse to adopt such a privilege.").

[24] *Id.* at 379–80.

¶ 23. We disagree with the defendant's assessment of the impact legislative history has on this court's authority to alter or abrogate the year-and-a-day rule. We have long rejected the doctrine that "legislative consideration coupled with inaction [is] indicative of preemption."[25]

¶ 24. In *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962), this court abandoned the previously held view that the legislature's refusal to enact an introduced bill amounted to "an expression by the legislature that no change should be made."[26] The *Holytz* decision announced that when the rule in question is a common-law rule, the court's responsibility for altering or abolishing that rule does not end due to legislative indifference or failure to enact a statute to the contrary. This important turning point has since been recognized in a number of decisions.[27]

¶ 25. This court's post-*Holytz* decision, *Sorensen v. Jarvis,* 119 Wis. 2d 627, 350 N.W.2d 108 (1984), is particularly on point. In *Sorensen,* this court abrogated the common-law rule barring a third party injured by an intoxicated minor from recovering damages from the

[25] *Garcia,* 46 Wis. 2d at 732. For a discussion of court rules of statutory interpretation relating to legislative conduct as a legal fiction, see Jane S. Schacter, *The Confounding Common Law Originalism in Recent Supreme Court Statutory Interpretation: Implications for the Legislative History Debate and Beyond,* 51 Stan. L. Rev. 1 (1998).

[26] *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 37, 115 N.W.2d 618 (1962) (citing *Schwenkoff v. Farmers Mut. Auto. Ins. Co.,* 6 Wis. 2d 44, 47 (1959)).

[27] *See, e.g., Goller v. White,* 20 Wis. 2d 402, 412, 122 N.W.2d 193 (1963) (explaining that the court retains power to change a court-made rule even though the legislature refused to make the change).

retail seller who sold the intoxicating beverage to the minor. The defendant in *Sorensen* asserted that the court was prohibited from changing the common-law rule because a recent legislative attempt to do so "was allowed to die in committee" and by this inaction a declaration of the legislative will not to change the common law was announced.[28] The *Sorensen* decision rejected this argument, concluding, "While in the past we have indicated that nonaction by the legislature could be so interpreted we have since stated that, even where there has been some evidence, arguably, of the legislature's will by its failure to act, we are not foreclosed from acting."[29]

¶ 26. Aside from this court's pronouncement in *Holytz* that common law unaltered by legislation remains within the province of the judiciary to develop, the decision not to treat a legislature's failure to enact a bill overriding the common law as indicative of legislative intent is further supported by considerations of the legislative process itself. As the *Sorensen* decision explains, "[N]onpassage of a bill is not reliable evidence of legislative intent, for it may have failed" for a variety of nonpolicy reasons, such as insufficient time, the agenda-setting maneuverings of legislative leadership, the efforts of special interests, or lobbying efforts at a committee or floor level.[30]

¶ 27. It would be absurd to conclude that every time a bill to change the common law was introduced but not passed by the legislature, the relevant common law effectively freezes at that moment until further action by the legislature. Indeed, such a rule would

[28] *Sorensen*, 119 Wis. 2d at 634.

[29] *Id.* at 634 (citation omitted).

[30] *Id.* at 634–35.

result in an unwarranted encroachment on the judicial powers of the courts by individual legislators empowered with their own personal veto over development of the common law of Wisconsin.

¶ 28.   We conclude, therefore, that the fact that the legislature declined to abrogate the year-and-a-day rule when it revised the criminal code in 1955 does not bar this court from doing so.[31]

## IV

¶ 29.   Having decided that this court has the authority to abrogate the year-and-a-day rule, we must now determine whether the time has come to do so. Common-law rules are meant to develop and adapt to new conditions and the progress of society.[32] In *Esser,* the court concluded that "whenever an old rule is found unsuited to present conditions or unsound, it should be set aside."[33] In *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 854, 236 N.W.2d 1 (1975), the court stated that "[i]t is the tradition of common-law courts to reflect the spirit of their times and discard legal rules when they serve to impede society rather than to advance it."[34]

[31] Nor is Wis. Stat. § 939.10 a prohibition on judicial development of common-law criminal rules. Section 939.10 provides that "common law rules of criminal law not in conflict with the criminal code are preserved." As the court in *Esser* concluded, preserving common-law rules is distinctly different from requiring that common-law rules must be "applied without change." *Esser,* 16 Wis. 2d at 585.

[32] *Esser,* 16 Wis. 2d at 582.

[33] *Id.* (quoting 11 Am. Jur. *Common Law* § 2 (1937)).

[34] The majority in *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 854, 236 N.W.2d 1 (1975), went on to quote from *Borgnis v.*

¶ 30.    We agree with the State that new conditions and the progress of society have rendered the year-and-a-day rule "unsuited to present conditions" and an impediment to society, and that the time has come to set it aside.

¶ 31.    As the State points out, there are three traditional justifications for the year-and-a-day rule. The primary and most frequently cited justification is that because of the primitive state of medical knowledge in the thirteenth century it was not possible to establish causation beyond a reasonable doubt when a great deal of time had elapsed between the injury to the victim and the victim's death. Therefore, it was presumed that a death that occurred more than one year and one day after the assault or injury was due to causes other than the criminal conduct.[35]

¶ 32.    Second, it has often been said that the rule arose from the early function of the jury. In early English courts, jurors decided cases by relying upon their own knowledge of the matter at issue, and could not rely upon the testimony of fact witnesses or expert witnesses. Thus, even if expert medical testimony had

_Falk Co._, 147 Wis. 327, 133 N.W. 209 (1911), as follows: "[T]he conditions and problems surrounding the people, as well as their ideals, are constantly changing. The political or philosophical aphorism of one generation is doubted by the next, and entirely discarded by the third. The race moves forward constantly . . . ." _Id._ at 349. Although _Borgnis_ dealt with an issue of constitutional interpretation, the _Antoniewicz_ court found this rationale applicable to changes in the common law.

[35] _See Rogers v. Tennessee_, 532 U.S. 451, 463 (2001).

been adequate to establish causation at common law, it would not have been admissible.[36]

¶ 33. Third, the rule has occasionally been characterized as an attempt to avoid the harsh result of the common law of homicides: Those convicted of homicide in any form, from first-degree to manslaughter, were subject to the death penalty.[37]

¶ 34. None of these justifications remain persuasive for maintaining the year-and-a-day rule in Wisconsin. Advances in medical science that permit causes of death to be identified with great certainty have undermined the first justification for the year-and-a-day rule.[38] Modern rules of evidence giving jurors access to expert opinion testimony regarding the cause of death undermine the second justification for the rule.[39] Finally, since Wisconsin does not have the death penalty, the third justification for the rule can have no sway in this state.

¶ 35. In addition to the lack of any justification for continuing the year-and-a-day rule in modern society,

<hr />

[36] *See Jackson,* 528 A.2d at 1216; *Ruesga,* 619 N.W.2d at 380; *Commonwealth v. Lewis,* 409 N.E.2d 771, 773 (Mass. 1980); *Stevenson,* 331 N.W.2d at 146; *State v. Rogers,* 992 S.W.2d 393, 397 (Tenn. 1999).

[37] *See Jackson,* 528 A.2d at 1216; *Ruesga,* 619 N.W.2d at 380; *Lewis,* 409 N.E.2d at 773; *Commonwealth v. Ladd,* 166 A.2d 501, 506 (Pa. 1960); *State v. Rogers,* 992 S.W.2d at 397.

[38] *See Rogers v. Tennessee,* 532 U.S. at 463; *Jackson,* 528 A.2d at 1216, 1220; *Lewis,* 409 N.E.2d at 773; *Stevenson,* 331 N.W.2d at 146; *State v. Sandridge,* 365 N.E.2d 898, 899 (Ohio Ct. Com. Pleas 1977); *State v. Rogers,* 992 S.W.2d at 401; 2 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 7.1, at 190 (1986).

[39] *See Sandridge,* 365 N.E.2d at 899; *State v. Rogers,* 992 S.W.2d at 401.

two affirmative reasons exist for abolishing the year-and-a-day common-law rule. First, the common-law rule raises the specter of a family's being forced to choose between terminating the use of a life-support system and allowing an accused to escape a murder charge.[40] Second, it is unjust to permit an assailant to escape punishment because of a convergence of modern medical advances and an archaic rule from the thirteenth century.[41]

¶ 36. Moreover, we agree with the State that the abrogation of the year-and-a-day rule would not deprive an accused of any fundamental right.[42] The burden would remain "upon the prosecution to prove proximate causation—that death flowed from the wrongful act of the defendant."[43] As one court has observed:

> Of course, abolition of the rule would not relieve the prosecution of its duty to prove all of the elements of the crime, including proximate causation, beyond a reasonable doubt. A murder conviction which rests upon uncertain medical speculation as to the cause of death is not a case which has been proved beyond a reasonable doubt. Fears about murder convictions for death 5, 10, or even 20 years after the injury are therefore unfounded where proximate cause is proven beyond a reasonable doubt. If such proof is available, the conviction is justified.[44]

---

[40] *Jackson,* 528 A.2d at 1217 n.14; *Stevenson,* 331 N.W.2d at 146.

[41] *Ruesga,* 619 N.W.2d at 382; *State v. Gabehart,* 836 P.2d 102, 105 (N.M. Ct. App. 1998).

[42] *Sandridge,* 365 N.E.2d at 899.

[43] *Id.*

[44] *Stevenson,* 331 N.W.2d at 146.

¶ 37. In short, we are persuaded that the year-and-a-day rule has outlived its various justifications and therefore now join the many states that have abrogated the rule.[45]

V

¶ 38. Having abrogated the year-and-a-day rule, the remaining issue we address is the applicability of this abrogation of the common-law rule to the defendant in the case at hand.

¶ 39. The United States Supreme Court has made it clear that this court has the authority to abrogate the year-and-a-day common-law rule prospectively or retroactively. In *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932), Justice Cardozo, writing for a unanimous court, affirmed a decision of the Montana Supreme Court to overrule precedent purely prospectively—that is, to apply the new rule only to future conduct—explaining: "We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward."[46]

---

[45] *See Ruesga,* 619 S.W.2d at 380 ("The great majority of states . . . have abrogated the rule, judicially or legislatively.").

[46] In *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358 (1932), the Montana Supreme Court had overruled its own 1921 decision, applied the old rule to the case at hand arising out of events that occurred while the old rule was in existence, and declared that the new rule only governed conduct arising thereafter. The United States Supreme Court declared that the state court's wholly prospective overruling of a rule of law was constitutional.

¶ 40. More recently, Justice Sandra Day O'Connor, writing for a five-justice majority in *Rogers v. Tennessee,* 532 U.S. 451 (2001), declared that the Tennessee Supreme Court had the authority to abrogate the year-and-a-day rule retroactively without violating the federal constitution.

¶ 41. These decisions make clear that state courts must decide for themselves whether to abrogate the common-law year-and-a-day rule prospectively or retroactively, and so we turn to Wisconsin case law for guidance.

¶ 42. This court has faced the question of prospective versus retroactive overruling of a common-law rule in several cases. The court has stated a number of times that it, like all courts, generally adheres to the "Blackstonian doctrine," which provides that "a decision to overrule or repudiate an earlier decision is retrospective in operation."[47] The Blackstonian doctrine is based on the jurisprudential theory that "courts declare but do not make law. In consequence, when a decision is overruled, it does not merely become bad law,—it never was the law, and the later pronouncement is regarded as the law from the beginning."[48]

¶ 43. The court, however, has also criticized the Blackstonian doctrine because it "leads to a strict and unyielding adherence to the rule of *stare decisis* and interferes with the progress of the law."[49] Furthermore, inequities can arise when a court departs from prece-

---

[47] *Harmann v. Hadley,* 128 Wis. 2d 371, 377, 382 N.W.2d 673 (1986) (quoting *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d 571, 575, 157 N.W.2d 595 (1968)); *Laabs v. Tax Comm'n,* 218 Wis. 414, 416–17, 261 N.W. 404 (1935).

[48] *Laabs,* 218 Wis. at 416–17.

[49] *Id.* at 417 (emphasis in original).

dent and announces a new rule.[50] Accordingly, the court has recognized exceptions to the Blackstonian doctrine and has employed the technique known as prospective overruling, or "sunbursting," to soften or limit the impact of a newly announced rule.[51]

¶ 44.   In *Harmann v. Hadley*, 128 Wis. 2d 371, 377, 382 N.W.2d 673 (1986), we explained that there are no easy-to-follow rules or consistent guidelines directing courts on whether or how to sunburst a decision. Courts must make the decision based upon the "equities peculiar to a given rule or case."[52]

¶ 45.   The decision to overrule a rule of law purely prospectively is therefore a "question of policy."[53] The

---

[50] *Id.*

[51] *See Harmann*, 128 Wis. 2d at 377–78.

Courts have employed the prospective overruling technique for over a century. Walter V. Schaefer, *The Control of "Sunbursts": Techniques of Prospective Overruling*, 42 N.Y.U. L. Rev. 631, 631–33 (1967).

The word "sunbursting" derives from the name of one of the parties in *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358 (1932), in which the Court limited its decision to future conduct.

[52] *Harmann*, 128 Wis. 2d at 379.

[53] *Harmann*, 128 Wis. 2d at 378. *See also* Thomas E. Fairchild, *Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting"*, 51 Marq. L. Rev. 254, 254 (1967–68) ("We employ the technique of prospective overruling as an exceptional expedient when the traditional retroactivity would wreak more havoc in society than society's interest in stability will tolerate."); Roger J. Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533, 541–42 (1977) ("A

most common reason for prospective overruling is to protect the reliance interests of individuals and institutions that have ordered their affairs under the prior legal regime. Other interests, however, are also implicated when a court overrules past precedent.[54] A free and democratic society requires stability in the law, and retroactive changes in the law jeopardize the courts' own institutional reliance on announced law. Our society also values the efficient administration of justice, and applying a new rule retroactively often imposes an added burden on the judicial institution. Moreover, retroactive application of criminal responsibility may be viewed as tarnishing the rule of law and institutional adherence to the law, thus tarnishing the "image of justice."[55]

¶ 46.   Purely prospective overruling frequently reduces the impairment of these interests and mitigates any hardships that result from a decision to change the law. Judge Thomas E. Fairchild, then judge of the Court of Appeals for the Seventh Circuit and former Wisconsin Supreme Court justice, explains that the use of the

court usually will not overrule a precedent even if it is convinced that the precedent is unsound, when the hardship caused by a retroactive change would not be offset by its benefits. The technique of prospective overruling enables courts to solve this dilemma by changing bad law without unsettling the reasonable expectations of those who relied on it.").

[54] *See Laabs,* 218 Wis. at 417; Thomas S. Currier, *Time and Change in Judge-Made Law: Prospective Overruling,* 51 Va. L. Rev. 201, 235–38, 254–55 (1965). In *Dupuis v. General Casualty Co.,* 36 Wis. 2d 42, 45–46, 152 N.W.2d 884 (1967), the court said that the elements of order, system, predictability, and reliance are to be considered in determining whether a compelling judicial reason exists for making a court decision purely prospective.

[55] Currier, *supra* note 54, at 254–55.

sunbursting technique relieves some pressure against departure from precedent and serves the same social interest in stability that is the root of stare decisis.[56]

¶ 47.  With respect to criminal cases, Wisconsin courts have expressed reservations about retroactive overruling of judge-made substantive criminal laws, making acts criminal that were not considered criminal when they occurred. In *Laabs v. Tax Commission,* 218 Wis. 414, 417, 261 N.W. 404 (1935), this court explained that the Blackstonian presumption of retroactivity should be abandoned where a criminal statute "which has received a limited construction by earlier decisions, has been so expanded in meaning by the later overruling decision as to make acts criminal which were not such under earlier decisions, and the later decision is sought to be applied to one whose acts were committed before the statute was given the enlarged construction."[57]

¶ 48.  Commentaries uniformly recognize the hardships created by retroactive application of judicial decisions expanding substantive criminal laws.[58] Chief Justice Roger J. Traynor of the California Supreme Court (ret.) explained that the problem of "retroactive versus prospective application calls for the most sensitive balancing of competing claims to justice in the area of criminal law."[59]

¶ 49.  An argument can be made for retroactive application of the new rule to this case. The defendant

---

[56] Fairchild, *supra* note 53, at 254.

[57] This portion of *Laabs* has been quoted with approval in *Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d at 576.

[58] *See, e.g.,* Currier, *supra* note 54, at 240–41, 252–72; Fairchild, *supra* note 53, at 256.

[59] Traynor, *supra* note 53, at 548.

274

here committed a criminal act, a battery against another person, ultimately resulting in death. Battery is recognized as criminal conduct regardless of the year-and-a-day rule, and the defendant cannot claim his conduct was lawful when he inflicted the injury. Furthermore, the criminal law accords high value to the preservation of individual life, and this defendant violently took a life.

¶ 50. We conclude, however, that a stronger argument can be made for purely prospective application of the new rule in this case. Our legal system accords high value to the rule of law and institutional adherence to the law. Although overruling the year-and-a-day rule does not mark the defendant's conduct in the case at hand as criminal for the first time, abrogating the year-and-a-day rule nevertheless creates criminal liability for a different crime, the crime of first-degree reckless homicide, where no such liability previously existed. By abrogating the year-and-a-day rule, we have altered the law after the defendant committed the crime. When the defendant battered the victim in this case, he was guilty of the crimes of aggravated battery and substantial battery, but not of violating Wis. Stat. § 940.02(1), which punished a person for recklessly causing the death of another human being within one year and one day of the conduct that showed utter disregard for human life.

¶ 51. In 1996, the defendant in the present case pled guilty to substantial battery and aggravated battery for his altercation with the victim and was sentenced to 15 years in prison. Then, more than two years later, the defendant was charged and convicted of first-degree reckless homicide for his part in that same altercation. Under the year-and-a-day rule in existence at that time, the State's prosecution was barred. The

275

defendant in the present case was thus assured by the law that he was safe from the State's pursuit on a murder charge.

¶ 52. The bar on the State's ability to prosecute the defendant for murder is removed for the first time today, by this court's decision to abrogate the year-and-a-day rule. Thus, the decision today, if applied to the defendant, revives the State's ability to bring this second prosecution for murder. Judge Learned Hand artfully stated, when describing the problem with extending a criminal statute of limitation after it has already expired, that "for the state to assure a man that he had become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest."[60]

¶ 53. As Chief Justice Roger J. Traynor ominously warned, permitting retroactive application of expanded criminal laws as a general proposition threatens the liberty interests of everyone within a free and open society:

> The first among them to be criminally prosecuted may be those whose offenses are so close to specified crimes as to seem properly punishable. But each such punishment broadens the area of prosecution and the number of those who may be caught in it. No one can forget that in our own time, in purportedly civilized countries, millions have thus been caught who have committed no greater offense than to be themselves.[61]

¶ 54. Abrogating the year-and-a-day rule retroactively and thereby expanding the construction of

---

[60] *Falter v. United States,* 23 F.2d 420, 425–26 (2d Cir. 1928) (quoted with approval in *State v. Haines,* 2003 WI 39, ¶ 11, 261 Wis. 2d 139, 661 N.W.2d 72).

[61] Traynor, *supra* note 53, at 550–51.

§ 940.02(1)—as well as all other homicide statutes in Wisconsin—undermines stability in the law and tarnishes the image of justice.

¶ 55. First, retroactive abrogation of the year-and-a-day rule would affect more than just the defendant in this case. There is no statute of limitations on a homicide prosecution in Wisconsin.[62] Consequently, retroactive abrogation of the common-law rule will put many other individuals who committed similar crimes —some decades ago and some who have already served time for their crimes and been released—in jeopardy of new prosecutions.[63]

¶ 56. Moreover, permitting the prosecution of these individuals for the same conduct for which they have already served time paints our criminal justice system with a brush of arbitrariness. Which of these individuals may actually be prosecuted could depend on a variety of arbitrary factors, including whether or not evidence has been preserved, the availability of resources in a given county to charge the accused again, and the age and health of the perpetrator. Liberty should not hinge on such chance events.[64]

---

[62] *See* Wis. Stat. § 939.74(2)(a).

[63] Nothing in the record indicates how many individuals this decision might affect. A brief case search, however, reveals that the issue may be present in another case making its way through the Wisconsin court system. *See State v. McKee,* 2002 WI App 148, ¶ 21 n.8, 256 Wis. 2d 547, 648 N.W.2d 34.

[64] "It is a fundamental ethical requirement that like cases should receive like treatment, that there should be no discrimination between one litigant and another except by reference to some relevant differentiating factor. The value of equality is at the root of our system of justice." Currier, *supra* note 54, at 237.

¶ 57. Consequently, we conclude that the year-and-a-day rule should be overruled purely prospectively. Prosecutions for murder in which the conduct inflicting the death occurs after the date of this decision are permissible regardless of whether the victim dies more than a year and a day after the infliction of the fatal injury. Although the defendant in the present case is not punished for the death of the victim and relatives and friends of the victim are not vindicated by our decision today, the defendant does not go unpunished. The defendant's conviction for aggravated battery and substantial battery stands. His sentence of 15 years imprisonment stands. Thus, important values in our society have been preserved.

¶ 58. In addition, we have expanded the construction of a statute through abrogation of the common-law year-and-a-day rule so that hereafter persons can be convicted of murder even though the death of the victim occurs more than a year and a day after the act inflicting the injury.

¶ 59. We recognize that there are different methods of prospective overruling and that one of the most common is to apply a change in the law prospectively in all cases except the one before the court that has served as the impetus for change. The reasons justifying this approach, however, are not present in the case at hand.

¶ 60. Courts and commentaries alike cite two reasons for applying a new rule of law to the parties in the case where the rule is announced and prospectively. The first is that to do otherwise would relegate the announced change in law to the status of mere dicta.[65]

[65] Fairchild, *supra* note 53, at 256.

¶ 61. Wisconsin, of course, does not always recognize intentionally answered questions of law in judicial decisions as nonbinding dicta. "It is deemed the doctrine of the cases is that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision."[66] Following this doctrine, prior decisions of this court have announced rules to be applied purely prospectively.[67]

¶ 62. The second reason is that it is necessary to apply the new rule to the party that challenges the old law as a reward to encourage others to continue to bring claims to the courts.[68] In the case at hand, it is the

---

[66] *State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981) (quoting *Chase v. Am. Cartage,* 176 Wis. 235, 238, 186 N.W. 598 (1922)). Other cases, however, assert the generally accepted doctrine that "a statement not addressed to the question before the court or necessary for its decision" is dictum, *Am. Family Mut. Ins. Co. v. Shannon,* 120 Wis. 2d 560, 565, 356 N.W.2d 175 (1984), and not binding on the court, *Reiter v. Dyken,* 95 Wis. 2d 461, 474, 290 N.W.2d 510 (1980).

[67] *See, e.g., Hobson,* 218 Wis. 2d 350, 381 (common-law defense of resisting an unlawful arrest in the absence of unreasonable force abrogated prospectively only; court refused to apply abrogation retroactively to Hobson); *Sparkman v. State,* 27 Wis. 2d 92, 98, 133 N.W.2d 776 (1965) (on grounds of public policy this court adopted rule for prospective application only that an indigent is entitled to appointed counsel at or prior to a preliminary hearing unless counsel is intelligently waived); *State ex rel. Sonneborn v. Sylvester,* 25 Wis. 2d 177, 179, 130 N.W.2d 569 (1964) (order taking original jurisdiction stated that any declaration of invalidity of the statute has prospective effect only).

[68] Fairchild, *supra* note 53, at 256.

279

defendant who has raised the claim of the application of the common-law rule. It is hardly a reward to the defendant to abrogate the year-and-a-day rule in his case. Such a decision would uphold his conviction for first-degree reckless homicide.

¶ 63. Even if it is more accurate to recognize the State as bringing the claim in this case by prosecuting the defendant for conduct that caused death more than one year and one day later, the State does not need the encouragement to press claims that other litigants might. Ordinarily a private party who raises an issue is in court for that case only and gains nothing if the new rule does not apply to it. In contrast, the State litigates frequently and is a repeat player in criminal cases. The State gains even if the new rule applies only prospectively. While barred from prosecuting the defendant in this case, the State gets the benefit of the rule in the future from the ability to bring homicide prosecutions unencumbered by this archaic common-law rule.

¶ 64. For the reasons set forth, we conclude that the year-and-a-day rule should be overruled purely prospectively. Accordingly we reverse the judgment and order of the circuit court and remand the cause to the circuit court to dismiss the criminal complaint.

*By the Court.*—The judgment and order of the circuit court are reversed and the cause remanded.

¶ 65. JON P. WILCOX, J. *(concurring in part, dissenting in part).* I agree with the court's determination that the year-and-a-day rule was, until today, part of Wisconsin law. I also agree that this court has the authority to abrogate such a common law rule, and that the year-and-a-day rule is outdated and should be abrogated. However, I must disagree with the court's conclusion in Part V of the majority opinion that the

280

abrogation of the rule should not be applied to this defendant. While I do not dispute the majority's assertion that this court may decide whether or not the "new rule" should be applied prospectively or retroactively, I take issue with the court's apparent disregard for a recent decision by the United States Supreme Court on this exact issue. In *Rogers v. Tennessee,* 532 U.S. 451 (2001), the Court held that retroactive application of abrogation of the year-and-a-day rule was permissible. This court has typically followed the interpretations of the Supreme Court on issues of due process. Because I see no reason why the court should not adopt the *Rogers* analysis and because I find it fair to apply the abrogation of the year-and-a-day rule to this defendant, I respectfully dissent.

¶ 66.    Picotte argues that the Wisconsin Constitution may afford defendants greater protection than the United States Constitution. That is certainly true. However, this court has repeatedly held that the due process provisions of the United States Constitution and the Wisconsin Constitution are substantively the same and should be interpreted as such. *State v. Hezzie R.,* 219 Wis. 2d 848, 891, 580 N.W.2d 660 (1998) ("This court has repeatedly stated that the due process clauses of the state and federal constitutions are essentially equivalent and are subject to identical interpretation."); *State v. Konrath,* 218 Wis. 2d 290, 297 n.9, 577 N.W.2d 601 (1998); *Reginald D. v. State,* 193 Wis. 2d 299, 306–07, 533 N.W.2d 181 (1995). Moreover, in previous cases interpreting the interaction of ex post facto principles and due process analysis, this court has relied upon the guidance of the United States Supreme Court. *See State v. Kurzawa,* 180 Wis. 2d 502, 510–13, 509 N.W.2d 712 (1994). In *Kurzawa,* this court, quoting *Marks v. United States,* 430 U.S. 188, 191–92 (1977),

held that the ex post facto and due process clauses share a common fundamental principle, that being "the notion that persons have a right to have fair warning of that conduct which will give rise to criminal penalties." . *Kurzawa,* 180 Wis. 2d at 510–11.

¶ 67.   In 2001, the United States Supreme Court in *Rogers* upheld a Tennessee Supreme Court decision, finding that retroactive application of the abrogation of Tennessee's year-and-a-day rule did not violate due process. *Rogers,* 532 U.S. 451. Once again dealing with the interplay of ex post facto and due process, the Court stated:

> [W]e conclude that a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, *only* where it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."

*Id.* at 462 (emphasis added). The Court went on to find that abrogation of the year-and-a-day rule was neither unexpected nor indefensible and thus, retroactive application did not violate due process. *Id.* at 462, 466–67.

¶ 68.   In holding that abrogation of the rule could be applied retroactively, the Supreme Court noted that the year-and-a-day rule "is widely viewed as an outdated relic of the common law." *Id.* at 462. The Court added that "practically every court" that recently examined the rule found that the rule had been rendered obsolete and that the original reasons for its existence no longer existed. *See id.* at 463. Although the Court acknowledged that due process does not require a defendant to be aware of the common law in all 50 states, it noted that in this case, such information was valuable to the analysis.

> [T]he fact that a vast number of jurisdictions have abolished a rule that has so clearly outlived its purpose is surely relevant to whether the abolition of the rule in a particular case can be said to be unexpected and indefensible by reference to the law as it then existed.

*Id.* at 464.

¶ 69. Additionally, the Supreme Court found it important that the year-and-a-day rule "had only the most tenuous foothold" in Tennessee's criminal law. *Id.* The rule was not part of the Tennessee statutory criminal code. *Id.* It had never served as the ground for any prosecution for murder in the state and had only been mentioned in Tennessee cases three times, in dicta. *Id.*

¶ 70. The *Rogers* decision provides the exact analysis we have been called upon to do in this case. The cases are strikingly similar both factually and legally. In *Rogers,* the defendant was charged with second-degree murder when the man he had stabbed 15 months earlier died from complications caused by those wounds. *Id.* at 454. Like the defendant here, Rogers claimed his murder prosecution violated due process. The Supreme Court rejected these arguments.

¶ 71. The majority here asserts several reasons for applying the abrogation prospectively, including reliance interests, systemic stability, efficient administration, and maintaining an untarnished "image of justice." Majority op., ¶ 45. The majority suggests that the rule should not be applied retroactively because the defendant would not have been subject to liability for murder under the law as it existed at the time the defendant beat his victim and that such application of a new rule threatens important liberty interests. Majority op., ¶ 50. However, even the majority acknowledged, as it must, that regardless of the year-and-a-day

rule, the defendant here cannot claim his conduct was lawful when committed. Majority op., ¶ 49.

¶ 72.    The majority's analysis, though, defies the standards laid out by the Supreme Court in *Rogers* and ignores the balance already done by that Court. As noted, this court has long followed the precedents of the Supreme Court in this realm of the law, and the majority does not distinguish *Rogers* nor does it provide a valid reason for straying from Supreme Court precedent in this case. Under *Rogers,* the test for the appropriateness of retroactive application is whether the change in law was "unexpected or indefensible." *Rogers,* 532 U.S. at 462. The reasons for the Court's decision in *Rogers* apply with equal or more force in this case.

¶ 73.    The majority in this case, like the *Rogers* Court, found that the year-and-a-day rule was clearly outdated. Majority op., ¶¶ 30–37. Even the defendant here cannot provide a good reason for the rule's continued existence. Next, the Court in *Rogers* noted that the vast majority of jurisdictions had already found the year-and-a-day rule obsolete and abrogated it. *Rogers,* 532 U.S. at 462–64. The Supreme Court found that the overwhelming precedents abrogating the rule served fair notice to the defendant that the abolition of the rule should be anticipated. *Id.* at 464, 466–67. Adding the *Rogers* decision to those many precedents noted by the Court, I submit that the defendant in this case is in an even poorer position than Rogers to argue that the abolition of the rule was unanticipated.

¶ 74.    Further, the Supreme Court found important that the year-and-a-day rule had but a "tenuous foothold" in the criminal law of Tennessee. In this case, Picotte argues that the rule had a stronger hold in Wisconsin law because its protections arose through the

state constitution. Whatever the source of the rule in Wisconsin, it nonetheless appears that the rule has no stronger "foothold" than the Tennessee rule did. As in Tennessee, the rule is not part of the state statutory criminal code. *See Rogers,* 532 U.S. at 464. Additionally, the rule had only been mentioned in Tennessee cases three times, all in dicta. *Id.* Wisconsin has even fewer cases mentioning the rule. As noted by the majority, "the rule apparently has never been discussed in Wisconsin case law except in a territorial case." Majority op., ¶ 11 n.11.[1]

¶ 75. In *Kurzawa,* 180 Wis. 2d at 511, this court acknowledged that the fundamental principle common to both ex post facto and due process analyses was "fair warning" of conduct that would give rise to criminal penalties. Under *Rogers,* such fair warning is fulfilled in this case. I disagree with the majority's stated concerns about unforeseen liability and appropriately rewarding those who challenge old laws. *See* majority op., ¶¶ 50–57, 62–63. The year-and-a-day rule has been overruled in the vast majority of jurisdictions that dealt with the issue. *See Rogers,* 532 U.S. at 463–64. The Supreme Court upheld abrogation of the rule and the retroactive application of the abrogation. *Id.* at 466–67. The rule hung on by a mere thread in this state. Given these factors, this defendant should not be able to

---

[1] In addition to the case noted by the majority, the State noted in its brief that the court of appeals also once referred to the rule. In a case similar to the one at hand, the court of appeals mentioned that it would not address the "common law's ancient year and a day rule" because neither of the parties had raised the issue. *State v. McKee,* 2002 WI App 148, ¶ 21 n.8, 256 Wis. 2d 547, 648 N.W.2d 34 (internal citation omitted). While it did not address the issue, the court of appeals did note that the majority of states have abrogated the rule. *Id.*

successfully argue the change in the common law rule is unexpected or indefensible. Finally, the defendant's conduct here was not innocent when committed. Picotte had warning that the injuries he inflicted could give rise to criminal penalties. He should not be rewarded simply because modern science allowed his victim to live more than a year and a day after he was beaten into a coma. As the Supreme Court in *Rogers* concluded:

> There is, in short, nothing to indicate that the [state] court's abolition of the rule in petitioner's case represented an exercise of the sort of unfair and arbitrary judicial action against which the Due Process Clause aims to protect. Far from a marked and unpredictable departure from prior precedent, the court's decision was a routine exercise of common law decision-making in which the court brought the law into conformity with reason and common sense. It did so by laying to rest an archaic and outdated rule that had never been relied upon as a ground of decision in any reported [state] case.

*Rogers,* 532 U.S. at 466–67.

¶ 76. For the foregoing reasons, I would adopt *Rogers* and conclude the abrogation of the year-and-a-day rule should be retroactively applied to this defendant.

¶ 77. I am authorized to state that Justices N. PATRICK CROOKS and DIANE S. SYKES join this dissent.

¶ 78. DIANE S. SYKES, J. *(concurring in part, dissenting in part).* I join Justice Wilcox's dissent. I write separately to emphasize certain additional concerns about the majority's refusal to apply the decision in this case to this defendant.

¶ 79. The majority concludes that "the year-and-a-day rule has outlived its various justifications" and that Wisconsin will "now join the many states that have abrogated the rule." Majority op., ¶ 37. I agree with this conclusion.

¶ 80. The majority also concludes, however, that "now" does not actually mean "now" in the usual sense, as in, "in this case."[1] Instead, "now" actually means "later," because the majority has decided to "sunburst" its decision—to abrogate the year-and-a-day rule prospectively only. Majority op., ¶¶ 38–64. I do not agree with this aspect of the majority opinion.

¶ 81. The majority identifies and discards as obsolete each of the justifications for the common law year-and-a-day rule, concluding unequivocally that "[n]one of the[ ] justifications remain persuasive for maintaining the year-and-a-day rule in Wisconsin." Majority op., ¶ 34. In addition, as an "affirmative reason" for abrogating the year-and-a-day rule, the majority holds that "it is unjust to permit an assailant to escape punishment because of a convergence of modern medical advances and an archaic rule from the thirteenth century." Majority op., ¶ 35.

¶ 82. If the year-and-a-day rule is unjustifiable then what justifies the majority's application of it in this case? The majority has declared that it is "unjust to permit an assailant to escape punishment" because of the year-and-a-day rule, majority op., ¶ 35, yet the majority endorses—indeed, orders—just such an injustice in this case. Majority op., ¶ 64. Picotte's conviction

---

[1] The majority acknowledges the Blackstonian rule that judicial decisions are generally retrospective in operation. Majority op., ¶ 42.

is overturned and he escapes responsibility for the reckless homicide he committed.

¶ 83. The majority notes that "[the] most common reason for prospective overruling is to protect the reliance interests of individuals and institutions that have ordered their affairs" in accordance with the prior legal rule. Majority op., ¶ 45. It cannot seriously be suggested that persons who commit violent, ultimately fatal assaults "order their affairs" around the year-and-a-day rule. The rule does not implicate any institutional reliance interests. Apparently conceding this, the majority bases its decision to sunburst the abrogation of the year-and-a-day rule in large part upon the "image of justice."[2] Majority op., ¶¶ 45, 54.

¶ 84. This is an "image of justice":[3]

---

[2] The majority obtains this rationale for prospective overruling from a law review article, Thomas S. Currier, *Time and Change in Judge-Made Law: Prospective Overruling*, 51 Va. L. Rev. 201 (1965).

[3] *See* State of Wisconsin Blue Book (2001–2002) at 129–135. The mosaic "Justice" is one of four panels of glass mosaic works, each one consisting of approximately 100,000 pieces of glass tile, in the State Capitol rotunda designed by Kenyon Cox, an American painter, draughtsman, and art critic. *Id.*

There are many other "images of justice." *See http://members.tripod.com/mdean/justice.html* (collecting various internet links to images of the goddess of justice). Magnificent "images of justice" adorn our State Capitol, courthouses, and other public buildings across the state and nation.

¶ 85.    The "image of justice," however, is not a legal principle upon which to base an appellate judicial decision. As far as I can tell, "the image of justice" as a rationale for the majority's decision to prospectively abrogate has something to do with 1) the "equities" in the case, 2) "policy," and 3) the requirement of "stability in the law." Majority op., ¶¶ 44–45.

¶ 86.    Stability in the law is an argument for adhering to an existing rule rather than refusing to apply a newly-declared one. Indeed, the technique of sunbursting enables courts to more readily avoid stare decisis and the legal stability that adherence to precedent seeks to promote. Announcing a new legal rule is

289

easier when the decision to do so is untethered from any obligation to apply it in the case before the court. Sunbursting promotes stability in the law only when reliance interests are very strong, which is not the case here.[4]

¶ 87. The generalized invocation of "policy" and "equity" gives the majority the flexibility to make the decision it wants to make, but does not articulate a principled, consistent rule of law, as the majority apparently concedes. Majority op., ¶ 44 ("[T]here are no easy-to-follow rules or consistent guidelines directing courts on whether or how to sunburst a decision."). The majority does not identify any equitable or policy factors that govern its use of sunbursting in this case. Such standardless appellate decisionmaking undermines rather than promotes the rule of law. *See* majority op., ¶ 50 ("Our legal system accords high value to the rule of law and institutional adherence to the law.").

¶ 88. The majority "agree[s] with the State that the abrogation of the year-and-a-day rule would not deprive an accused of any fundamental right," because the burden remains on the prosecution to prove causation beyond a reasonable doubt. Majority op., ¶ 36. Nevertheless, the majority concludes that retroactive abrogation of the year-and-a-day rule creates a "hardship" that must be "mitigated" or "softened" by prospective overruling. Majority op., ¶¶ 43, 46.

¶ 89. Picotte inflicted serious, ultimately fatal head injuries on the victim, who was in a coma for over two-and-a-half years before he died. Picotte was con-

---

[4] Professor Currier, the author of the law review article from which the majority derives the "image of justice" rationale for prospective overruling, acknowledges that the criminal law "is not an area where people are apt to have acted in reliance on perceived law." Currier, *supra* note 2, at 254.

victed after a jury trial. The State proved causation (as well as the other elements of the crime) beyond a reasonable doubt. There are no claims of any constitutional or statutory violations.[5] Under these circumstances, I do not see any "hardship" in holding Picotte criminally responsible for reckless homicide. This case hardly falls within Justice Traynor's "ominous warning" against convicting people for committing "no greater offense than to be themselves." Majority op., ¶ 53.

¶ 90.    The majority claims that retroactive abrogation of the year-and-a-day rule will put "many other individuals who committed similar crimes" in jeopardy. Majority op., ¶ 55. Actually, retroactive abrogation would probably affect very few people—by its terms,

---

[5] Picotte does argue that retroactive abrogation of the year-and-a-day rule (that is, applying the abrogation to his case) would violate the *Ex Post Facto* Clause of the state constitution. *See* Wis. Const., art. I, § 12 ("No . . . ex post facto law . . . shall ever be passed.") The state and federal *Ex Post Facto* Clauses prohibit only *ex post facto* legislative enactments. *See also* U.S. Const., art. I, § 9. In *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001), a constitutional challenge to the Tennessee Supreme Court's retroactive abrogation of the year-and-a-day rule was brought under the federal due process clause, although the *Ex Post Facto* Clause "figure[d] prominently in [the petitioner's] argument." The United States Supreme Court held that while *ex post facto* principles are implicated in the concept of due process, "[e]xtending the [*Ex Post Facto*] Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text. It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decision-making, on the other." *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001). The majority does not address the defendant's state constitutional argument. For the reasons discussed in Justice Wilcox's dissent, I would interpret the state constitution consistently with *Rogers*.

the rule applied only in the highly unusual circumstance of a death occurring more than a year after the criminal infliction of injury. The majority itself notes that the year-and-a-day rule is mentioned only once in Wisconsin case law, in a territorial case dating from 1841. Majority op., ¶ 11 n.11.

¶ 91. The majority also asserts that "the prosecution of these individuals for the same conduct for which they have already served time paints our criminal justice system with a brush of arbitrariness." Majority op., ¶ 56. Again, the majority is referring to hypothetical "prosecutions" of hypothetical "many other individuals." More importantly, it is not at all uncommon for the criminal justice system to prosecute, convict, and sentence a defendant for several different crimes arising out of a single incident. Unless there is a double jeopardy bar, the law does not regard this practice as unfair or "paint[ed] with a brush of arbitrariness."

¶ 92. Ultimately, the majority's refusal to apply the general rule of retroactivity is itself quite arbitrary, resting only on the majority's sense that it would be somehow unfair to Picotte and the hypothetical "many other individuals" who might be subject to homicide prosecutions if their victims hereafter die of injuries criminally inflicted before the date of this decision. But as Justice Wilcox discusses at greater length in his dissent, the United States Supreme Court has held that retroactive abrogation of the year-and-a-day rule fully comports with due process. *Rogers v. Tennessee*, 532 U.S. 451 (2001).

¶ 93. I agree with Justice Wilcox that the majority's retroactivity analysis is inconsistent with *Rogers*. If retroactive abrogation of the year-and-a-day rule does not offend due process, then it is not unfair to retroactively abrogate the rule in this case and apply

that law to Picotte.[6] The majority does not rest its decision on any independent state constitutional ground.

¶ 94. Thus, in the end, the majority essentially holds that the "image of justice" prohibits what the federal and state constitutions and the applicable law permit. This, then, is really just an act of judicial will. Applying the general rule of retroactivity, I would affirm the defendant's conviction for reckless homicide.

¶ 95. I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this dissent.

---

[6] The Supreme Court's decision in *Rogers* undermines the majority's reliance on the Currier law review article that advanced the "image of justice" rationale for prospective overruling. Currier stated that "the image of justice quite obviously will not tolerate retroactive application of criminal responsibility, for the same reason that the [E]x [P]ost [F]acto [C]lause will not." Currier, *supra* note 2, at 255. The Supreme Court in *Rogers* declined to import the *Ex Post Facto* Clause into the determination of the constitutionality of retroactive judicial decisionmaking, and sustained the retroactive abrogation of the common law year-and-a-day rule against a due process challenge. The majority acknowledges as much, majority op., ¶ 40, but does not explain how a judicial act that is consistent with the constitution and the laws nevertheless impermissibly violates the "image of justice."