STATE of Wisconsin EX REL. Brian L. BUSWELL,
Plaintiff-Appellant-Petitioner,

v.

TOMAH AREA SCHOOL DISTRICT,
Defendant-Respondent.

Supreme Court

*No. 2005AP2998. Oral argument January 11, 2007.*
*—Decided June 13, 2007.*

2007 WI 71

(Also reported in 732 N.W.2d 804.)

180

For the plaintiff-appellant-petitioner there were briefs by *Jack D. Buswell* and *Arndt, Buswell & Thorn, S.C.,* Sparta, and oral argument by *Jack D. Buswell.*

For the defendant-respondent there was a brief by *Lori M. Lubinsky, Brian C. Hough,* and *Axley Brynelson, LLP,* Madison, and oral argument by *Lori M. Lubinsky.*

An amicus curiae brief was filed by *Thomas C. Bellavia,* assistant attorney general, on behalf of Attorney General Peggy A. Lautenschlager.

An amicus curiae brief was filed by *Melissa A. Cherney* and *Christine L. Galinat,* Madison, on behalf of the Wisconsin Education Association Council.

An amicus curiae brief was filed by *Michael J. Julka, Richard F. Verstegen,* and *Lathrop & Clark LLP,* Madison, on behalf of the Wisconsin Association of School Boards, Inc.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Brian Buswell, seeks review of an unpublished court of appeals decision affirming a judgment that dismissed his claims that the Tomah Area School District violated the public notice requirements of Wisconsin's open meetings law.[1] He asserts that the court of appeals erred when it concluded that the Tomah Board of Education provided

---

[1] *See Buswell v. Tomah Area School Dist.,* No. 2005AP2998, unpublished slip op. (Wis. Ct. App. July 6, 2006) (affirming a

adequate notice that it would be considering the Tomah Education Association's master contract at its June 1, 2004, meeting and a new hiring procedure for coaches at both its June 1 and June 15, 2004, meetings.

¶ 2. Buswell advances that the notices violated Wis. Stat. § 19.84(2) because they were not reasonably likely to apprise members of the public of the subject matter of the meetings and that the notices are inconsistent with the policies for the open meetings law as set forth in Wis. Stat. §§ 19.81(1) and (4). In essence, Buswell contends that this court should adopt a reasonableness standard for determining the degree of specificity required in identifying the subject matter of a meeting in order to comply with the notice provision of the open meetings law.

¶ 3. We conclude that the plain meaning of Wis. Stat. § 19.84(2) sets forth a reasonableness standard, and that such a standard strikes the proper balance contemplated in Wis. Stat. §§ 19.81(1) and (4) between the public's right to information and the government's need to efficiently conduct its business. Applying that standard, we determine that the June 1 notice was insufficient under § 19.84(2) and contrary to the policies in §§ 19.81(1) and (4) because it failed to reasonably apprise members of the public that it would consider the Tomah Education Association's master contract at that meeting. We further determine, however, that the failure to detail the new hiring procedure for coaches contained in the new master contract renders neither the June 1 nor the June 15 notice insufficient because it would not be reasonable to require such detail in

judgment of the Circuit Court for Monroe County, Michael J. McAlpine, Judge); Wis. Stat. § 19.84 (2003–04)(all references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted).

187

these circumstances. Accordingly, we reverse the court of appeals and remand the cause to the circuit court for further proceedings.

## I

¶ 4. In June 2004, the Tomah Board of Education ("Board") held two meetings regarding a new master contract between the Tomah Education Association ("TEA") and the Tomah Area School District ("School District") for the 2003–04 and 2004–05 school years. Prior to the June meetings, Tomah community members had expressed concerns over a proposal to include a provision giving priority to TEA members over other candidates for athletic coaching positions in the new TEA master contract. The record reflects that no previous TEA master contract contained a procedure for hiring athletic coaches.

¶ 5. Prior to the June 1 meeting, 16 community members, including Buswell, sent a letter to the Board regarding the School District's policy for hiring coaches. The letter expressed concern about the possibility that the Board would adopt a new hiring policy for coaches and objected to including any such policy in the new TEA contract.

¶ 6. On June 1, 2004, the School Board held a special meeting in closed session to discuss the provisions of the new TEA master contract. The Board had issued a public notice of the agenda which stated:

> Contemplated closed session for consideration and/or action concerning employment/negotiations with District personnel pursuant to Wis. Stat. § 19.85(1)(c).[2]

---

[2] Wis. Stat. § 19.85(1) outlines the procedures and legitimate purposes for holding closed meetings. Section 19.85(1)(c) provides that closed sessions may be convened for:

¶ 7. During the June 1 closed session, the Board tentatively approved the TEA master contract subject to TEA ratification and ratification by the Board in open session. The new master contract included the preferential hiring procedure for coaches given to TEA members over other applicants who were not members of TEA.

¶ 8. On June 15, 2004, the Board held a regular meeting preceded by a public notice stating, in relevant part:

> New Business—Consideration and/or Action on the Following:
>
> . . .
>
> TEA Employee Contract Approval

During the open session of the June 15 meeting, the Board officially ratified the TEA master contract that had been tentatively approved at the June 1 meeting.

¶ 9. Buswell filed suit against the School District, alleging it had violated the open meetings law by failing to: give adequate notice that (1) the Board would consider the TEA master contract at the June 1 meeting; (2) the Board would consider the new hiring procedure for coaches contained within that contract at the June 1 meeting; and (3) the Board would consider ratification of the new hiring procedure for coaches at the June 15 meeting. The circuit court granted the School District's motion to dismiss for failure to state a claim, basing its ruling on the court of appeals decision in *State ex rel. H.D. Enter. II, LLC v. City of Stoughton,*

---

Considering employment, promotion, compensation or performance evaluation data of any public employee over which the governmental body has jurisdiction or exercises responsibility.

230 Wis. 2d 480, 602 N.W.2d 72 (Ct. App. 1999). The court of appeals affirmed the circuit court, concluding that notice of the meeting met the standard under *H.D. Enterprises. Buswell v. Tomah Area School Dist.,* No. 2005AP2998, unpublished slip op., ¶ 7 (Wis. Ct. App. July 6, 2006). Buswell petitioned for review.

## II

¶ 10. This case comes to the court on review of a motion to dismiss for failure to state a claim. In such a posture, a reviewing court takes as true the facts alleged in the complaint. *Methodist Manor of Waukesha, Inc. v. Martin,* 2002 WI App 130, ¶ 2, 255 Wis. 2d 707, 647 N.W.2d 409.

¶ 11. Our focus here is on the interpretation of Wisconsin's open meetings statutes. We must discern whether the notices provided for the two meetings complied with the open meetings law. The interpretation of a statute presents questions of law that we review independently of the determinations rendered by the circuit court and court of appeals. *Haferman v. St. Clare Healthcare Found., Inc.,* 2005 WI 171, ¶ 15, 286 Wis. 2d 621, 707 N.W.2d 853.

## III

¶ 12. Although the current version of Wisconsin's open meetings law has been in force for over 30 years, this court has never addressed the issue of the degree of specificity required in identifying the subject matter of a meeting in order to comply with the notice provision of the open meetings law. Buswell contends that the

notices provided by the Board for its June 1 and June 15, 2004, meetings were too general and did not comply with § 19.84(2). That section provides in relevant part:

> Every public notice of a meeting of a governmental body shall set forth the time, date, place and subject matter of the meeting, including that intended for consideration at any contemplated closed session, in such form as is reasonably likely to apprise members of the public and the news media thereof. . . .[3]

¶ 13. With respect to the June 1 meeting, Buswell claims that the notice was deficient because it did not indicate that the Board would act upon a new master contract with the TEA, and it did not state that the Board would act upon the new procedure for hiring coaches within the master contract. He argues that the notice would have had to mention both the TEA contract and the new hiring provision in order to be "reasonably likely to apprise members of the public" of the subject matter of the meeting. With respect to the June 15 meeting, Buswell claims that the notice was deficient because it did not state that the Board would act upon the new hiring provision for coaches.

¶ 14. Buswell further argues that the failure to indicate that the meetings would consider the TEA contract and new hiring provision is contrary to the polices of the open meetings law, as set forth in Wis. Stat. § 19.81(1) and (4). Section 19.81(1) provides:

---

[3] The statute requires that a notice be "reasonably likely to apprise members of the public and the news media" of the subject matter of the meeting. However, Buswell does not frame his argument in regards to adequate notice to the media. Rather, his arguments all address whether the notices reasonably apprise members of the public. Accordingly, this is the question we address.

In recognition of the fact that a representative government of the American type is dependent upon an informed electorate, it is declared to be the policy of this state that the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business.

Section 19.81(4) adds that the open meetings subchapter "shall be liberally construed to achieve the purposes set forth in this section . . . ." Buswell maintains that these policies require more specific notice than that provided in the notices for the June 1 and June 15 meetings. At the heart of Buswell's argument is his contention that the court of appeals erred in failing to adopt and apply a reasonableness standard in determining whether the notices complied with Wisconsin's open meetings law.

¶ 15. The cornerstone of the court of appeals' analysis is the interpretation of § 19.84(2) in *H.D. Enterprises*. It involved a grocery store's application for a liquor license from the city of Stoughton. The city published notice of a council meeting at which it would consider the application. The published agenda for the meeting indicated that the council would discuss the application by listing the item as "licenses." At the meeting, the council denied the license. 230 Wis. 2d at 482. The council, however, reconsidered the denial at a second meeting. The notice for the second meeting also listed the item as "licenses." At the second meeting, the council granted the license. *Id.*

¶ 16. The plaintiff filed a lawsuit alleging that the city had violated § 19.84(2). It argued that merely listing an agenda item as "licenses" does not provide specific enough information to reasonably apprise members of the public of the subject matter of the

meeting, which was the reconsideration of the denial of the grocery store's application for a liquor license. *Id.* at 485. The court of appeals disagreed with the plaintiff. It determined that the word "licenses" sufficed to apprise members of the public of the subject matter of the meeting, and that the statute does not require "that the subject matter of a meeting be explained with any more specificity." *Id.* at 486. Rather, it adopted a bright-line rule that "the general topic of items to be discussed is sufficient to satisfy the statute." *Id.* at 487.

¶ 17. In the present case, the court of appeals determined that *H.D. Enterprises* compelled the conclusion that the notices were sufficient. Because the terms in the Board's notices—"employment/negotiations" and "TEA Employment Contract Approval"—are no more general than "licenses," the court of appeals reasoned that the Board provided sufficient subject matter notice for its June 1 and June 15 meetings. *Buswell,* unpublished slip op., ¶ 7.

¶ 18. The court of appeals further indicated that it was required to follow *H.D. Enterprises,* but was sympathetic to Buswell's argument. It stated that "[w]hile we are sympathetic to Buswell's policy argument, and might have decided the issue differently prior to [*H.D. Enterprises*], we do not write on a clean slate." *Id.,* ¶ 6. Instead, it noted that any arguments for changing the standard established in *H.D. Enterprises* must be directed to this court.

¶ 19. The School District maintains that very general terms such as "employment/negotiations" and "TEA Employment Contract Renewal" provided sufficient notice for the meetings. At oral argument the School District contended that under the *H.D. Enterprises* bright-line rule, even broader language, such as "District personnel," would have provided sufficiently

193

specific notice. We, however, disagree that such a broad heading is per se "reasonably likely to apprise members of the public" that the subject of the meeting is a new master contract for teachers.

¶ 20. The court of appeals' and the School District's interpretation of *H.D. Enterprises* elevates a very general provision into a one-size-fits-all provision. Under their approach, a meeting is not required to have notice with any more specificity than a very general provision such as "licenses."

¶ 21. Allowing such broad language as "licenses" to constitute sufficient notice as a matter of law is contrary to the plain language of § 19.84(2) and the policies of the open meetings law set out in §§ 19.81(1) and (4). We therefore reevaluate the approach of *H.D. Enterprises*. Rather than taking a bright-line approach, where any notice that is no more general than "licenses" is sufficient, we adopt a reasonableness approach, according to which notice must be reasonably specific under the circumstances.[4] It is our view that such a

---

[4] In a concurrence, Justice Roggensack contends that *H.D. Enterprises* did not establish a bright-line rule and accuses the majority of attacking a straw man. Concurrence, ¶¶ 56, 68 (citing *State ex rel. H.D. Enter. II, LLC v. City of Stoughton,* 230 Wis. 2d 480, 602 N.W.2d 72 (Ct. App. 1999)). This "straw man" interpretation, however, is the generally accepted interpretation by everyone other than that concurrence. It is the interpretation adopted by the Attorney General, the parties, the circuit court, and the court of appeals in this case. It is also the interpretation that comports with the actual language of *H.D. Enterprises.*

In an amicus brief, the Attorney General states that *H.D. Enterprises* created a "one-size-fits-all standard applicable to all notices." It concludes that the "bright-line standard of *H.D. Enterprises* is inconsistent with the 'reasonably apprise' standard established by the Legislature in Wis. Stat. § 19.84(2)."

194

reasonableness standard is required by the plain language and policies of the open meetings law.

■

¶ 22. To begin, the plain language of § 19.84(2) is not amenable to a bright-line rule. That section requires that public notice be *"reasonably* likely to apprise members of the public" (emphasis added). The use of the word "reasonably" suggests a balancing of factors. Such a balancing requires a case-specific analysis. In other words, whether notice is sufficiently specific will depend upon what is reasonable under the circumstances.

¶ 23. We find support for this determination in the reasoning of *State ex rel. Badke v. Vill. Bd. of the Vill. of Greendale,* 173 Wis. 2d 553, 494 N.W.2d 408 (1993).

Likewise, the petitioner concedes that "[a]fter *H.D. Enterprises,* if general notice provisions like 'licenses' . . . are acceptable, then all notices that are equally as general pass muster." The respondent also agrees, asserting that if the word "licenses" was deemed sufficiently specific under *H.D. Enterprises,* then " 'Consideration and/or Action Concerning Employment Negotiations' is more than enough to apprise members of the public that the School Board may consider and/or act concerning the negotiations."

The circuit court and the court of appeals agree that *H.D. Enterprises* creates a bright-line rule. The circuit court determined that it was bound under *H.D. Enterprises* to conclude that the notice for the meetings was adequate. The court of appeals similarly concluded that notices that are no more general than "licenses" suffice under *H.D. Enterprises.* Buswell, unpublished slip op., ¶ 7.

Finally the very language of *H.D. Enterprises* supports the interpretation that notices no more general than "licenses" are per se adequate. "There is no requirement in the statute that the subject matter of a meeting be explained with any more specificity." 230 Wis. 2d at 486.

In *Badke,* a village board meeting regarding a controversial special use permit was held at a facility that was not quite large enough to accommodate the approximately 70 people who attended. Twenty people could enter only a foyer in the building, not the main meeting hall, and up to three people were denied entrance altogether. Some attendees testified that they could not adequately hear the proceedings from their spot in the foyer. *Id.* at 563.

¶ 24. The plaintiffs in *Badke* contended that because some citizens could not gain entrance and others could not hear what was said at the meeting, the meeting violated the requirement that meetings be "held in places reasonably accessible to members of the public and shall be open to all citizens at all times . . . ." Wis. Stat. § 19.81(2). This court determined that the words "reasonably accessible" suggests that "open to all citizens at all times" does not require absolute accessibility. Rather, it held that "reasonably" implies that reviewing courts must evaluate on a case-by-case basis in determining whether meetings are sufficiently accessible. *Id.* at 580. We determine that the word "reasonably" has similar effect in § 19.84(2).

¶ 25. The proposition that a statement of the general topic of a meeting should per se constitute sufficient notice runs contrary to the policies articulated in § 19.81(1). That section states that the "public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Such information extends to public notice of meetings under § 19.84(2). *Badke,* 173 Wis. 2d at 577–78.

¶ 26. We note, too, that § 19.81(1) states that the open meetings law is based on the premise that "representative government [depends] upon an informed elec-

196

torate." We observe that government functions best when it is open and when people have information about its operations. It is not, however, merely a matter of enhancing the functions of government. Rather, the government must be accountable to the governed. It must be accountable to the people who underwrite government finances and provide its legitimacy. Having access to information about the workings of government undercuts arguments of subterfuge and ultimately promotes public trust and confidence. Moreover, as this court determined in *Badke,* the notice requirement gives the public information about the business to be conducted that will alert them to the importance of the meeting, so that they can make an informed decision whether to attend. *Badke,* 173 Wis. 2d at 573–74 and 577–78.

¶ 27. Thus, the language of § 19.84(2) and the policies underlying the open meetings law do not abide a bright-line rule where the general topic of a meeting constitutes sufficient subject matter notice as a matter of law. Rather, they demand a reasonableness standard according to which notice must be reasonably specific under the circumstances of the case. Because the reasonableness standard is at odds with the application of a bright-line rule, we therefore overrule *H.D Enterprises.*[5]

---

[5] As noted in an amicus brief submitted by the Attorney General, this approach comports with the approach consistently advocated by the Attorney General, who is charged with interpreting the state's open meetings law under Wis. Stat. § 19.98. In the compliance guide for open meetings law published by the Department of Justice, the Attorney General urges that in noticing meetings, officers "should keep in mind that the public is entitled to the best notice that can be given at the time the

¶ 28. The reasonableness standard requires taking into account the circumstances of the case in determining whether notice is sufficient. This includes analyzing such factors as the burden of providing more detailed notice, whether the subject is of particular public interest, and whether it involves non-routine action that the public would be unlikely to anticipate. *See H.D. Enter.,* 230 Wis. 2d at 490 (Vergeront, J., dissenting).

¶ 29. The first factor, the burden of providing more specific information on the body noticing the meeting derives from § 19.81(1). It balances the policy of providing greater information with the requirement that providing such information be "compatible with the conduct of governmental affairs." Wis. Stat. § 19.81(1). Whether more detailed notice is compatible with the conduct of governmental affairs is determined on a case-by-case basis. Such a determination may include, but is not limited to, the time and effort involved in assessing what information should be provided in a notice and the inherent limitations of citizen boards. In *Badke,* this court aptly described the demands on public officials:

> In Wisconsin, there are many parttime citizen boards that work long hours for relatively little or no pay. These boards' real compensation comes from the satisfaction of public service. It is very difficult for these boards to anticipate the myriad of situations that may call into question the parameters of the open meeting law. We recognize that most public officials diligently try to abide by the law . . . .

notice is prepared." Wis. Dept. of Justice, *Wisconsin Open Meetings Law: A Compliance Guide,* p. 9 (Aug. 2005).

173 Wis. 2d at 570. The crucial point is that the demands of specificity should not thwart the efficient administration of governmental business.

¶ 30. In considering the second factor, we are persuaded that particular public interest in the subject matter of a meeting may require greater specificity in the hearing notice. Particular public interest may be a matter of both the number of people interested and the intensity of that interest. The level of interest, in and of itself, however, is not dispositive. Rather, it must be balanced with other factors on a case-by-case basis.

¶ 31. Third, the degree of specificity of notice may depend on whether the subject of the meeting is routine or novel. Where the subject of a meeting recurs regularly, there may be less need for specificity because members of the public are more likely to anticipate that it will be addressed. However, novel issues are more likely to catch the public unaware. Novel issues may therefore require more specific notice.

¶ 32. The determination of whether notice is sufficient should be based upon what information is available to the officer noticing the meeting at the time notice is provided, and based upon what it would be reasonable for the officer to know. Thus, whether there is particular public interest in the subject of a meeting or whether a specific issue within the subject of the meeting will be covered, and how that affects the specificity required, cannot be determined from the standpoint of when the meeting actually takes place. Rather, it must be gauged from the standpoint of when the meeting is noticed.

¶ 33. The School District raises several objections to the adoption of a reasonableness standard in determining whether a notice complies with Wisconsin's open meetings laws. None is persuasive. First, quoting *H.D. Enterprises,* it asserts that a case-by-case analysis would "burden municipalities with an obligation to detail every issue that will be discussed under every agenda item during meetings when that is not mandated by statute." *H.D. Enterprises,* 230 Wis. 2d at 487. A notice must reasonably apprise members of the public of the subject matter of a meeting under the circumstances. A reasonableness standard will not require that every issue on every agenda always be enumerated because such a requirement would be unreasonable. Rather, general subject headings may suffice in cases where a general heading reasonably apprises members of the public of the subject matter of the meeting. In other cases, reasonably apprising members of the public may require greater specificity.

¶ 34. Second, the School District argues that a reasonableness standard would inappropriately constrain discussion at meetings of governmental bodies because their deliberations would be limited to the noticed narrow topics. We disagree. Under a reasonableness standard, meeting participants would be free to discuss any aspect of the noticed subject matter, as well as issues that are reasonably related to it. It is true that a meeting cannot address topics unrelated to the information in the notice. However, that is because the notice requirement functions to assure that members of the public are reasonably apprised of what is discussed at such meetings. The objection that other topics may

200

not be freely addressed is therefore not an objection to a reasonableness standard, but to the notice requirement itself.

¶ 35. Third, the School District argues that a reasonableness standard would impose an unacceptable burden on governmental bodies to predict and gauge public interest in every item on a meeting's agenda. While it is correct that a reasonableness standard will at times require that bodies anticipate and account for public interest when noticing meetings, it will not impose a per se requirement to predict and gauge public interest on each subject at every meeting. Where predicting and gauging public interest imposes an unreasonable burden, the bodies will not be required to do so.

■■■

¶ 36. Applying the reasonableness standard, we determine that the notice for the June 1 hearing was not sufficiently specific to be "reasonably likely to apprise members of the public" of the subject matter of the meeting. The June 1 notice stated: "Contemplated closed session for consideration and/or action concerning employment/negotiations with District personnel pursuant to Wis. Stat. § 19.85(1)(c)." This description is vague, for it could cover negotiations with any group of district personnel or with any individual employee within the district.[6]

---

[6] The Wisconsin Association of School Boards, Inc. and the Wisconsin Education Association Council submitted amicus briefs arguing that the Board was not a "governmental body" within the meaning of § 19.82(1) when it discussed the terms of a collective bargaining agreement at the June 1 meeting. That section excludes from the definition of "governmental body" entities "formed for or meeting for the purpose of collective bargaining under subch. I, IV or V of ch. 111." Wis. Stat. § 19.82(1). Because the Board met on June 1 in part to discuss

¶ 37. Moreover, the June 1 notice was misleading. It stated that the closed session was pursuant to Wis. Stat. § 19.85(1)(c).[7] That section provides for closed sessions for considering matters related to *individual* employees, not for considering collective bargaining agreements.[8] As the School District conceded at oral argument, the appropriate statute to cite would have

provisions of the TEA master contract, the briefs argue that the Board was not required to follow the notice requirements of the open meetings law. Neither the School District nor Buswell raise this issue in briefs or in oral argument. Further, the record does not indicate that the Board met on June 1 for the purpose of collective bargaining. Rather, it indicates that it met to consider approval of the terms reached via collective bargaining. We therefore decline to address the issue here.

[7] The School District argues that notice for closed sessions may be less specific than notice for open sessions due the fact that the public may not attend. It cites to *Olson v. City of Baraboo Joint Review Bd.* for the view that less detail is required where public input is not allowed, as in closed session. 2002 WI App 64, ¶ 15, 252 Wis. 2d 628, 643 N.W.2d 796. However, *Olson* implies only that adequate notice of a closed session may not require information about whether a vote on a subject will occur, so long as the subject matter of the vote is adequately specified. *Id.* We do not see a justification for a per se rule that notice for closed sessions may be less specific than notice for open sessions.

In contrast, the Attorney General contends in an amicus brief that closed sessions may require more specific notice than open sessions. We likewise do not see a justification for a per se rule that notice for closed sessions must always be more specific than notice for open sessions. Notice of closed sessions must contain enough information for the public to discern whether the subject matter is authorized for closed session under § 19.85(1).

[8] The minutes for the June 1 meeting show that the Board considered applications for the position of high school principal,

been § 19.85(1)(e).[9] Because the notice was vague and misleading, it was not "reasonably likely to apprise members of the public" of the subject matter of the meeting—in this case the TEA master contract.[10]

¶ 38. Examining the circumstances of this case, we determine that those factors support the conclusion that the June 1 notice required greater specificity. First, and most importantly, stating that the TEA master contract would be discussed at the June 1 meeting would not be a burden to the Board. It requires only a few words. Further, the notice for the June 15 meeting actually listed the TEA master contract on the agenda, and there is no contention that listing it there was a burden.

---

which would fall under § 19.85(1)(c). Thus, citing that statute is not misleading insofar as individual personnel matters were considered at the meeting. Rather, it is misleading because it suggests that *only* individual personnel matters were to be considered at the meeting.

[9] Section 19.85(1)(e) provides for closed sessions when:

(e) Deliberating or negotiating the purchasing of public properties, the investing of public funds, or conducting other specified public business, whenever competitive or bargaining reasons require a closed session.

[10] The School District cites to *Olson v. City of Baraboo Joint Review Bd.* for the proposition that incorrect information on a public notice does not render that notice inadequate. 252 Wis. 2d 628, ¶ 14. We agree that there is not a per se rule that § 19.84(2) is violated any time there is incorrect information on a public notice. Here, however, the notice does not specify whether the closed session is to consider individual employment matters or collective bargaining agreements, and the cited statute misleadingly suggests that the meeting will cover only individual employment matters. The mistake therefore compounds the inadequacy of the notice rather than being offset by other information in the notice. *See id.,* ¶ 15.

¶ 39. Second, the TEA master contract included a new hiring provision for coaches that was of interest to a number of people in the community. Several citizens had made the effort to petition the Board regarding whether to put a provision for hiring coaches into the master contract.

¶ 40. Third, the TEA master contract was not a routine subject insofar as it contained a new hiring provision for coaches to which a number of members of the community objected. This suggests that the notice should have mentioned the TEA master contract.

¶ 41. Thus, analyzing the circumstances of the case, we conclude that the Board did not provide sufficient notice for the June 1 meeting. The notice was vague and misleading. Under the circumstances, it was not sufficiently specific to be "reasonably likely to apprise members of the public" that the meeting concerned the TEA master contract.

¶ 42. Although we determine that the notice for the June 1 meeting required greater specificity than it provided as to the TEA master contract, we do not agree with Buswell's contention that the notice violated § 19.84(2) by failing to state that the Board would act upon the new hiring provision for coaches set forth within the master contract. Again, we apply the factors to the circumstances of the case to determine whether providing the more specific information would be reasonable.

¶ 43. The first of the factors, the burden of providing greater information, weighs against requiring that the notice for the June 1 meeting state that the Board would address the hiring provision. Admittedly, the second and third factors weigh in favor of requiring

that the notice state that the Board would address the hiring provision. There was particular public interest in the hiring provision, and the hiring provision within the contract was novel. However, we determine that the burden of providing notice of particular provisions of collective bargaining contracts is great enough that requiring that information would be unreasonable under the circumstances.

¶ 44. Master contracts may be complex and contain any number of provisions. Requiring that school boards, or other similarly situated bodies, anticipate and list all of those provisions in a public notice would likely consume a disproportionate amount of their limited time and may require a significant effort. Moreover, as the School District argues, requiring that public notice list which individual provisions of collective bargaining agreements will be discussed in closed session could serve to undermine governmental bodies' bargaining positions, which would place a substantial burden on them. Thus, considering the balance of factors, we determine that the burden of including a particular contract provision in its notice for the June 1 meeting is substantial enough that it is not required under § 19.84(2).[11]

---

[11] Justice Butler contends that for the same reason that it would not have been burdensome to provide notice that the TEA master contract would be under consideration at the June 1 meeting, it would also not be burdensome to provide notice of the new hiring provision for coaches, for in each case "a few words in the notice would have sufficed." Concurrence/dissent, ¶ 88. Admittedly, adding a few words about hiring coaches is not burdensome. However, the number of words required for a particular contract provision is not the only consideration. Rather, the question is what degree of specificity will be required in describing the particular aspects of a contract that will be under consideration. It is our determination that pro-

¶ 45. We also reject Buswell's argument that the notice for the June 15 meeting was insufficient. Unlike the notice for the June 1 meeting, the notice for the June 15 meeting listed "TEA Employee Contract Approval." Thus, a member of the public could determine that the TEA master contract would be discussed by reading the notice. As with the notice for the June 1 meeting, the notice for the June 15 meeting need not have specified that the new hiring provision for coaches would be part of the TEA contract. The burden of specifying particular provisions in a multifaceted contract would be too great. We acknowledge that given the level of interest in the subject matter, it may have been beneficial to list the new hiring provision that was contained in the TEA master contract. However, we do not mandate such specificity here.

IV

¶ 46. As discussed above, whether a public notice is sufficient under open meetings law is determined by applying a reasonableness standard and analyzing the specifics of the case. This is a departure from the bright-line rule announced in *H.D. Enterprises,* according to which a notice stating only the general topic to be discussed at the meeting is sufficient. 230 Wis. 2d at 486–87. Ordinarily, this court adheres to the doctrine that a decision which overrules an earlier decision is retrospective in operation. *State v. Picotte,* 2003 WI 42, ¶ 42, 261 Wis. 2d 249, 661 N.W.2d 381 (citing *Harmann v. Hadley,* 128 Wis. 2d 371, 377, 382 N.W.2d 673 (1986)).

---

viding notice that a contract will be discussed at a meeting is not burdensome, but specifying the particular provisions of a multifaceted contract is significantly more burdensome.

Yet, retroactive application of a new rule can be unsettling because of justifiable reliance on a contrary view of the law. This court will therefore on occasion prospectively overrule past precedent to limit such unsettling effect. *Harmann,* 128 Wis. 2d at 378.[12]

¶ 47. Three factors inform the inquiry of whether our judicial determination should have retroactive versus prospective application. *Wenke v. Gehl Co.,* 2004 WI 103, ¶ 70–71, 274 Wis. 2d 220, 682 N.W.2d 405. Those three factors are: (1) whether the decision establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether retroactive application would further or retard the operation of the new rule; and (3) whether retroactive application could produce substantial inequitable results. *Id.* at ¶ 71.

---

[12] The technique of prospective overruling is often called "sunbursting," for *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358 (1932); *see* Thomas E. Fairchild, *Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting",* 51 Marq. L. Rev. 254, 255 (1967–68). Courts may apply a new rule of law "prospectively" in different ways. A court may determine that the new rule will apply only to future events, and not to the case before it or any other case arising from conduct that has already occurred, as was the case in *Sunburst Oil. Id.* at 364; *Harmann v. Hadley,* 128 Wis. 2d 371, 378, 382 N.W.2d 673 (1986). A court may also apply the rule to the case in which the rule is announced, and to future events, but not to cases arising from conduct that has already occurred, as we are doing in the instant case. *Harmann,* 128 Wis. 2d at 378. In addition, a court may apply the new rule to cases in which the trial has not yet begun or in which the time for appeal has not yet expired. *Id.,* citing *Bielski v. Schulze,* 16 Wis. 2d 1, 19, 114 N.W.2d 105 (1962).

¶ 48. Applying these factors here, we reach the conclusion that the application of the reasonableness standard should be given only prospective effect. First, our decision establishes a standard that is a departure from past precedent. Second, retroactive application would not further the operation of the new rule. The public cannot go back and attend meetings that may have been inadequately noticed when such meetings have already occurred. Third, and most importantly, retroactive application of the reasonableness standard may produce substantial inequitable results. It could jeopardize the legitimacy of past actions taken at all levels of government.

¶ 49. In order to reduce the burden on governmental bodies and mitigate any hardships that result from a change in the law, we will apply the rule announced here only to this case and to cases challenging future notices. Thus, any challenge to the specificity of the subject matter of a public notice under Wis. Stat. § 19.84(2) that was issued prior to the date this opinion is mandated will be examined under the requirements of *H.D. Enterprises*. We apply the new rule to this case because Buswell has acted as a relator on behalf of the state, pursuant to Wis. Stat. § 19.97(3). As such, he has worked to vindicate his and others' right to open government. *State ex rel. Hodge v. Town of Turtle Lake*, 180 Wis. 2d 62, 78, 508 N.W.2d 603 (1993). Applying the new rule in such a case may serve as an incentive for others to act similarly and to deter future misconduct.

V

¶ 50. Having determined that the June 1 notice was insufficient, and that we will apply the reasonableness standard in this case, we turn to the question of remedy. In his amended complaint, Buswell requests

voiding the hiring provision for coaches in the master contract adopted in the June meetings, forfeitures against any member of the board who knowingly attended a meeting violating the open meetings law, and reasonable attorney fees.

¶ 51. Voiding a contract provision is not an available remedy here. The court was advised that the master contract that adopted the hiring provision has expired. The argument that a provision in an expired master contract can be voided appears incongruous.

¶ 52. Similarly, forfeitures are not available as a remedy in this case. Section 19.96 provides for forfeitures by "[a]ny member of a governmental body who knowingly attends a meeting of such body held in violation" of the open meetings law. Our decision overrules the bright-line rule of *H.D. Enterprises* and establishes a reasonableness standard in its place. Members of governmental bodies who complied with the law as it then existed cannot be sanctioned for a violation based on an interpretation first announced today.

¶ 53. With respect to attorney fees, Wis. Stat. § 19.97(4) provides that a person bringing an action as relator on behalf of the state (as is the case here) for enforcement of the open meetings law may receive costs and attorney fees:

> In such actions [i.e., where a person brings a case as a relator], the court may award actual and necessary costs of prosecution, including reasonable attorney fees to the relator if he or she prevails . . . .

¶ 54. Section 19.81(4) requires that the provisions of the open meetings law be liberally construed to advance the law's purposes. This court has interpreted that requirement to merit awarding attorney fees to the

prevailing relator where doing so advances the purposes of the open meetings law. *Hodge v. Town of Turtle Lake,* 180 Wis. 2d at 78. Such is the case here. Awarding attorney fees to Buswell will provide an incentive to others to protect the public's right to open meetings and to deter governmental bodies from skirting the open meetings law. Accordingly, we remand the case to the circuit court to determine the appropriate award.[13]

## VI

¶ 55. In sum, we adopt a reasonableness standard for determining the degree of specificity required in identifying the subject matter of a meeting in order to comply with the notice provision of the open meetings law. We conclude that the plain meaning of Wis. Stat. § 19.84(2) sets forth a reasonableness standard, and that such a standard strikes the proper balance contemplated in Wis. Stat. §§ 19.81(1) and (4) between the public's right to information and the government's need to efficiently conduct its business. Applying that standard, we determine that the June 1 notice was insufficient under § 19.84(2) and contrary to the policies in §§ 19.81(1) and (4) because it failed to reasonably apprise the public that it would consider the TEA's master contract at that meeting. We further determine, however, that the failure to detail the new hiring procedure for coaches contained in the new master contract renders neither the June 1 nor the June 15 notice insufficient because it would not be reasonable to require such detail in these circumstances. Accordingly, we reverse the court of appeals and remand the cause to the circuit court for further proceedings.

---

[13] The appropriate award of attorney fees is determined by the "lodestar" methodology. *Anderson v. MSI Preferred Ins. Co.,* 2005 WI 62, ¶ 39, 281 Wis. 2d 66, 697 N.W.2d 73.

*By the Court.*—Rights declared. We reverse the court of appeals and remand the cause to the circuit court.

¶ 56. PATIENCE DRAKE ROGGENSACK, J. (*concurring*). Because I conclude that the June 1, 2004 notice of the open meeting was insufficient to satisfy Wis. Stat. § 19.84(2) (2005–06),[1] I join the mandate of the court. However, I write separately because in my view the notice for the June 1 meeting does not satisfy the requirements of *State ex rel. H.D. Enterprises II, LLC v. City of Stoughton,* 230 Wis. 2d 480, 602 N.W.2d 72 (Ct. App. 1999), in regard to § 19.84(2). I also write separately because instead of analyzing whether the subject matter of the notice given for the June 1 meeting is sufficient under *H.D. Enterprises* and § 19.84(2), the majority opinion sets up a straw-man, its "bright line rule," that it says *H.D. Enterprises* creates. Majority op., ¶¶ 16, 19, 22. The majority opinion then proceeds to overrule *H.D. Enterprises* by knocking down the straw-man that the majority opinion created. Majority op., ¶¶ 27, 52. In my view, the public would be better served by additional guidance about compliance with § 19.84(2) than is given either in *H.D. Enterprises* or in the majority opinion. Accordingly, I respectfully concur.

## I. BACKGROUND

¶ 57. This case arises out of a citizen complaint by Brian Buswell (Buswell) that the board of the Tomah Area School District (the board) did not comply with the public notice provisions of Wis. Stat. § 19.84(2), in regard to a June 1 meeting where both the TEA Employee Contract and the applicants for the position of

---

[1] All further references are to the 2005–06 version of the Wisconsin Statutes unless otherwise noted.

high school principal were discussed. Buswell also alleges that the public notice provisions were violated for a second meeting held on June 15, 2004. He alleges that the "subject matter" of both meetings was not reasonably described in the respective notices because they did not give notice that the board would be considering new hiring procedures for athletic coaches that would give hiring preference to current TEA members. He also asserts that the notice for the June 1 meeting was misleading because that notice included a reference to Wis. Stat. § 19.85(1)(c), as the statutory basis for conducting part of the meeting in closed session. He asserts, and the City agrees, that § 19.85(1)(c) is not applicable to discussing the TEA Employee Contract in closed session.

¶ 58. The board contends that both notices were sufficient. The notice for the June 1 meeting provided:

> Contemplated Closed Session for Consideration and/or Action Concerning Employment/Negotiations with District Personnel Pursuant to Wis. Stats. 19.85(1)(c).

The board admits that the statutory reference in the notice could have been misleading, but it asserts that *State ex rel. Olson v. City of Baraboo Joint Review Board,* 2002 WI App 64, 252 Wis. 2d 628, 643 N.W.2d 796, concludes that incorrect information in a notice of a public meeting is not fatal to the sufficiency of the notice. The board also contends that by noticing that it would consider "TEA Employee Contract Approval" at the June 15 meeting, it complied with Wis. Stat. § 19.84(2).[2]

¶ 59. Prior to the June 1 board meeting, the community knew that there was a proposal for the TEA

---

[2] I agree with the majority opinion's conclusion that the notice for the June 15 meeting is sufficient to satisfy Wis. Stat. § 19.84(2); therefore, I do not address that notice further in this concurrence.

212

Employee Contract that would give priority to current TEA members in regard to hiring for coaching jobs. Majority op., ¶ 4. The question that is presented for this review is whether the notice of both meetings reasonably apprised the public and the news media of the subject matter of those meetings when the hiring of coaches was not mentioned, and in regard to the June 1 notice, whether, because the TEA Employee Contract was not mentioned, the notice was misleading as well.

## II. DISCUSSION

A. Standard of Review

¶ 60. This review requires us to interpret various statutory provisions and to apply them to the facts presented herein. The interpretation and application of statutes are questions of law subject to our independent review. *Jackson County v. DNR,* 2006 WI 96, ¶ 10, 293 Wis. 2d 497, 717 N.W.2d 713.

B. Wisconsin Stat. § 19.84(2)

¶ 61. Wisconsin Stat. § 19.84(2) provides in relevant part:

> Every public notice of a meeting of a governmental body shall set forth the time, date, place and subject matter of the meeting, including that intended for consideration at any contemplated closed session, in such form as is reasonably likely to apprise members of the public and the news media thereof.

Buswell does not challenge the sufficiency of the notice of the time, date or place of the meeting. Rather, he challenges the sufficiency of the subject matter described in the notice, claiming it is incomplete, misleading and does not reasonably apprise the public of what the board will discuss.

### 1. Notice of the June 1 Meeting

¶ 62. It is undisputed that the board intended to and did discuss two topics at the June 1 meeting under one subject matter topic: the TEA Employee Contract and applications for the position of high school principal. Therefore, the board was required to give public notice of both, if there are two different subject matters that were to be discussed during the meeting.

¶ 63. "Subject matter" is not defined in Wis. Stat. § 19.84 or elsewhere in the statutes that address open meeting requirements. *Black's Law Dictionary* describes "subject matter" as:

> The issue presented for consideration; the thing in which a right or duty has been asserted; the thing in dispute.

*Black's Law Dictionary* 1466 (8th ed. 2004). This is a broad inclusive definition, but it gives us little guidance about how much particularity or in what form one should describe the subject matter that will be addressed at a meeting of a public body.

¶ 64. In *H.D. Enterprises,* the court of appeals addressed "subject matter" in the context of the Stoughton Common Council's consideration of Pick 'N Save's application for a liquor license. *H.D. Enterprises,* 230 Wis. 2d at 482. Pick 'N Save's application had been published in accord with alcohol licensing requirements found in Wis. Stat. § 125.04(3). *Id.* at 482. The meeting agenda was used by the common council as public notice that it would consider the liquor license on January 27. *Id.* The agenda listed "licenses" as an agenda topic. *Id.* This notice was the first of three occasions on which the liquor license was discussed, before H.D. Enterprises alleged the City violated its

public notice obligation. *Id.* The application for a liquor license was denied after that first common council meeting. *Id.* However, H.D. Enterprises did not allege that the notice insufficiently described the subject matter of the first meeting. *Id.* at 487.

¶ 65. At the second meeting, "licenses" again was listed on the common council's agenda that gave notice of the meeting. *Id.* at 482. Pick 'N Save's application was granted at that meeting. *Id.* H.D. Enterprise had not appeared at the second meeting, and it objected to the reconsideration of Pick 'N Save's application. *Id.* Therefore, approximately six days after the second meeting, the common council convened a third meeting that H.D. Enterprises attended and in which the common council considered H.D. Enterprises' request that it rescind Pick 'N Save's liquor license. *Id.* at 482–83. The common council refused to do so. *Id.* at 483. H.D. Enterprises then sued the City of Stoughton claiming that the term "licenses" was too general a description of the subject matter of the second meeting to satisfy Wis. Stat. § 19.84(2). *Id.*

¶ 66. The circuit court concluded the notice was sufficient and H.D. Enterprises appealed. In concluding that "licenses" was a sufficient description of the subject matter to reasonably apprise the public, the court of appeals examined all the circumstances surrounding consideration of Pick 'N Save's application for a liquor license. *Id.* at 483–84 and 487. It noted that the notice for the common council's first consideration of the matter used "licenses" to describe the subject matter. *Id.* at 487. The court noted that H.D. Enterprises had appeared at that council meeting and therefore, it had experience with the City's use of that description. *Id.* The court of appeals noted that H.D. Enterprises did not complain about the lack of notice for the first

215

meeting. *Id.* The court of appeals also balanced the burden to municipalities, which would be caused by detailing every facet of a subject matter that may be addressed under every agenda item, with the sufficiency of the notice to the public. *Id.*

¶ 67. The court of appeals opinion took guidance from *State ex rel. Schaeve v. Van Lare,* 125 Wis. 2d 40, 370 N.W. 271 (Ct. App. 1985), where Schaeve complained that the description of the subject matter of the meeting did not have enough particularity to comply with the statute. *H.D. Enterprises,* 230 Wis. 2d at 486. In *Schaeve,* it was contended that the subject matter set out in the notice was insufficient because it said only that the possible discipline of a public employee would be considered. *Schaeve,* 125 Wis. 2d at 47. The court of appeals concluded there was "no requirement in the statute that the subject matter of a meeting must be explained with any more specificity." *Id.* at 47.

¶ 68. Contrary to the assertion in the majority opinion, its straw-man, the "bright-line rule," is nowhere mentioned or "announced" in *H.D. Enterprises. See* majority op., ¶ 46. Instead, *H.D. Enterprises* is based on the facts and circumstances that were relevant to the license that would be discussed at an upcoming common council meeting, as it had been in other meetings. *H.D. Enterprises,* 230 Wis. 2d at 482–83 and 485. *H.D. Enterprises* reasoned that "[s]ection 19.84(2), stats. requires that a public notice set forth the time, date, place and subject matter of a meeting in such form as is likely to reasonably apprise members of the public." *Id.* at 485.[3] It established no rule that is applicable without consideration of the relevant facts and circumstances.

_____

[3] The City of Stoughton used entire meeting agendas as the public notices for its meetings. *State ex rel. H.D. Enterprises v. City of Stoughton,* 230 Wis. 2d 480, 482, 602 N.W.2d 72 (Ct. App. 1999).

¶ 69. Moving to the case now before the court, upon consideration of the facts and circumstances of the notice provided by the board of the Tomah Area School District in regard to the June 1 meeting, I conclude it was insufficient under *H.D. Enterprises's* interpretation of Wis. Stat. § 19.84(2). I conclude that the board's notice of the June 1 meeting was insufficient based on three facts that are present here and for which countervailing facts were present in and important to the decision in *H.D. Enterprises.*

¶ 70. First, two very different topics were addressed under one heading in the notice for the board's June 1 meeting, e.g., the consideration of the applicants for the position of high school principal and the provisions for a new TEA Employee Contract. In *H.D. Enterprises,* the liquor license was the sole topic noticed and discussed at both meetings. *Id.* at 487.

¶ 71. Second, the provisions of the master TEA Employee Contract were going to be presented at the June 1 meeting, i.e., this was a brand-new contract for the board to consider. In *H.D. Enterprises,* the second notice given was the same as the first. *Id.* at 487. Because the liquor license was discussed by the common council under that topic previously, the public and the news media had experience in the subject matter as described in the notice. *Id.* H.D. Enterprises had attended a previous common council meeting that was noticed in the same form, by using the meeting agenda with the topic "licenses" as a subject matter. *Id.*

¶ 72. And, third, the notice for the June 1 meeting was misleading in regard to the TEA Employee Contract because the notice referenced Wis. Stat. § 19.85(1)(c) as the basis for the board's taking up the subject matter in closed session. Section 19.85(1)(c) is the appropriate cite for the consideration of applicants

217

for the position of high school principal, but it does not apply to collective bargaining agreements such as the TEA Employee Contract. Section 19.85(1)(e) is the section of the statutes that permits a public body to consider collective bargaining agreements in closed session. By failing to include both § 19.85(1)(c) and (e) in the notice, the board misled the public about both the subject matter of the closed meeting and the number of topics that would be discussed. In *H.D. Enterprises*, there was no allegation that the notice was misleading. Accordingly, I conclude that the notice of the June 1 meeting of the board did not set forth the subject matter in a form that reasonably apprised the public and the news media that the TEA Employee Contract would be discussed in the closed session portion of that meeting. Therefore, the notice for the June 1 meeting did not comply with the requirements of Wis. Stat. § 19.84(2), as interpreted in *H.D. Enterprises*.

¶ 73. However, even though I conclude that the notice for the June 1 meeting was not sufficient to satisfy Wis. Stat. § 19.84(2), as interpreted in *H.D. Enterprises,* it appears that the guidance given by *H.D. Enterprises* is not sufficient to assist in achieving compliance by those public bodies that are required to give public notice of the subject matter of meetings.[4] The

[4] There are times when one authors an opinion and believes that the issues presented were sufficiently addressed, but in hindsight, they were not. As the author of *H.D. Enterprises,* I now find myself in a position similar to that of Justice Robert Jackson. When faced with a similar problem, he remarked, "The matter does not appear to me now as it appears to have appeared to me then." *McGrath v. Kristensen,* 340 U.S. 162, 178 (1950) (Jackson, J. concurring) (further citations omitted). *H.D. Enterprises* appears to me now a bit differently than it appears to have appeared to me in 1999. When it was written, the court of appeals decision in *H.D. Enterprises* appeared to provide

statute requires that notice of the subject matter be set out "in such form as is reasonably likely to apprise" the public and the news media. I would advise, but not require, that public bodies adopt a standard format for their meeting agendas. The entire agenda for the meeting should then be used as the § 19.84(2) notice. This would give the public and the news media experience in what issues are apt to be addressed under recurring topics. I suggest that the agendas contain subtopics when more than one matter is to be discussed under one agenda topic. I also recommend including in the notice a statement that questions about the agenda can be addressed to a representative of the public body, whose name, phone number and an appropriate time to call would be listed. If the public body has described a subject matter in a way that generates questions or confusion about what is to be discussed, I suggest a more detailed agenda topic be employed for future meeting agendas. In that way, the public body will learn both what specificity is required to describe the subject matter of the meeting and what form best assists the public and the news media in understanding what will transpire at meetings.

2. Other Concerns

¶ 74. I also part company with the majority opinion's use of *State ex rel. Badke v. Village Board of the Village of Greendale,* 173 Wis. 2d 553, 494 N.W.2d 408 (1993), as support for its contentions about the specificity with which the subject matter in a Wis. Stat. § 19.84(2) public notice is to be given. Majority op., ¶¶ 23–26. *Badke never* addresses or refers to the speci-

sufficient guidance on the form in which the subject matter in a public notice should be provided in order to reasonably apprise the public and the news media of what would be discussed. However, now it appears more guidance was needed.

219

ficity of the subject matter in a public notice. And this is for good reason. In *Badke,* there was *no notice of any type* given that the village board was going to meet. *Badke,* 173 Wis. 2d at 569.

¶ 75. Furthermore, in regard to the specificity with which the subject matter of a meeting must be described in the notice, the majority opinion asserts that if the topic is of "particular public interest," "greater specificity" may be required in the notice. Majority op., ¶¶ 29–30. I see no qualifier in Wis. Stat. § 19.84(2). The public and the news media are those to whom reasonable notice is due. In my view, the majority opinion's requirement is an invitation for additional litigation claiming the notice was insufficient. For example, how is the public servant who prepares the notice to know that there is a "particular public interest"? Will the notice be insufficient if he or she should have known of a "particular public interest" but did not? Does he or she have a duty to learn of a "particular public interest" in the subject matters that will be considered? Furthermore, does a member of the public who has an interest in the subject matter of the meeting but who has never expressed that interest to others deserve less complete notice?

¶ 76. I would not venture into these subjective woods. Rather, I conclude that the standard set by Wis. Stat. § 19.84(2) is an objective standard. Notice is to be reasonable. And, the persons to be noticed are simply the public, interested or not, and the news media, interested or not.

¶ 77. And finally, I disagree with the majority opinion's broad assertion that "[i]t is true that a meeting cannot address topics unrelated to the information in the notice." Majority op., ¶ 34. The majority opinion cites no authority for this conclusion. Does the majority

opinion mean that the typical agenda item of "such other matters as may come before the body" can never provide sufficient notice under Wis. Stat. § 19.84(2) for a matter that unexpectedly is presented to the board and requires immediate attention? At least one attorney general did not believe that to be the case. 66 Op. Att'y Gen. 68, 70 (1977). Notice based on the facts and circumstances of the case affect when the notice given is sufficient to reasonably apprise the public and the news media.

¶ 78. Accordingly, for the reasons set forth above, I concur, joining only the mandate of the majority opinion.

¶ 79. LOUIS B. BUTLER, JR., J. (*concurring in part, dissenting in part*). I join those portions of the majority opinion which conclude that (a) Wis. Stat. § 19.84(2) (2003–04)[1] sets forth a reasonableness standard; (b) such a standard strikes the proper balance contemplated in Wis. Stat. § 19.81(1) and (4) between the public's right to information and the government's need to efficiently conduct its business; (c) applying the reasonableness standard, the June 1, 2004, notice was insufficient under § 19.84(2) and contrary to the policies in § 19.81(1) and (4) because it failed to reasonably apprise members of the public that the master contract of the Tomah Education Association ("TEA") would be considered at that meeting; (d) *State ex rel. H.D. Enterprises II, LLC v. City of Stoughton,* 230 Wis. 2d 480, 602 N.W.2d 72 (Ct. App. 1999), should be overruled; (e) this decision should be applied prospectively; and (f) this matter should be remanded to the circuit court to determine the appropriate award as to costs and attorney fees.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 80. I write separately because I conclude that the majority fails to apply the reasonableness standard it adopts in this case to the question of whether the June 1 posting provided sufficient notice regarding the Tomah Board of Education's ("Board") consideration of a *new* hiring procedure for athletic coaches. Applying the majority's standard, I conclude that the June 1 notice was insufficient because it failed to reasonably apprise members of the public that the Board would be considering a proposal that was a matter of particular interest to the community, involved a non-routine action that the public was unlikely to anticipate, and could have easily been included in the notice.

¶ 81. The facts are accurately set forth in the majority opinion,[2] and will not be repeated in full here. Of import is the fact that in June 2004 the Board held two meetings regarding a new master contract between TEA and the Tomah Area School District ("School District") for the 2003–04 and 2004–05 school years. Prior to those meetings, a number of community members had expressed concerns over a proposed new procedure for hiring athletic coaches.[3] No prior TEA master contract contained a procedure for hiring athletic coaches.

---

[2] Majority op., ¶¶ 4–9.

[3] The broad community interest exhibited in this case prior to the June 2004 meetings establishes that the public was aware that a proposal was under consideration for a new hiring policy giving priority to TEA members over other candidates for athletic coaching positions in the new TEA master contract. Majority op., ¶ 4. Consequently, I accept the majority's conclusion that the notice for the June 15 meeting, which listed TEA contract approval, was legally sufficient. *See* majority op., ¶ 45. Nevertheless, the better practice, given the level of public interest that was shown here, would have been to give notice that the procedures for hiring coaches would be discussed at the June 15 meeting.

¶ 82. The public notice issued by the Board setting forth the agenda of the June 1 meeting stated, in relevant part:

> Contemplated Closed Session for Consideration and/or Action Concerning Employment/Negotiations with District Personnel Pursuant to Wis. Stats. 19.85(1)(c).

Section 19.85(1)(c) provides that closed sessions may be convened for considering employment, promotion, compensation or performance of any public employee. The notice did not contain any information referencing the TEA master contract or any proposed hiring procedures for athletic coaches.

¶ 83. At issue is whether the notice provided for the June 1, 2004, meeting was too general and not in compliance with Wis. Stat. § 19.84(2). That section provides, in relevant part:

> Every public notice of a meeting of a governmental body shall set forth the . . . subject matter of the meeting, including that intended for consideration at any contemplated closed session, in such form as is reasonably likely to apprise members of the public. . . .

¶ 84. Brian Buswell ("Buswell") contends that the June 1 notice was deficient because it did not indicate that the Board would act upon a new master contract with the TEA, and it did not indicate that the Board would act upon the new hiring provision for athletic coaches. The majority concludes, and I agree, that the notice failed to apprise the public that the TEA master contract would be under consideration at the June 1 meeting. Majority op., ¶ 36. I respectfully disagree with the majority's conclusion that the notice was sufficient with respect to the new hiring provision for athletic coaches. Majority op., ¶ 42.

¶ 85. The majority notes that with respect to the TEA master contract, the notice given was vague because it could cover any negotiations with any group of district personnel or with any individual employee within the district. *Id.,* ¶ 36. Moreover, it was misleading, as the statute referenced[4] in the notice provides for closed sessions for individual employees, not for considering collective bargaining agreements. *Id.,* ¶ 37.

¶ 86. The reasonableness standard adopted by the court takes into account such factors as the burden of providing more detailed notice, whether the subject is of particular interest, and whether it involves nonroutine action that the public would be unlikely to anticipate. *Id.,* ¶ 28. The majority first points out that it would not unduly burden the Board to include a few words in the notice about the fact that the TEA master contract would be discussed at the June 1 meeting. *Id.,* ¶ 38. Second, the majority notes the TEA master contract included a hiring provision that was of interest to a number of people in the community, as several citizens had made an effort to petition the Board regarding whether to put a provision for the hiring of coaches into the master contract. *Id.,* ¶ 39. Third, the majority recognizes that the TEA master contract was not a routine subject, as it contained a new provision for the hiring of coaches to which members of the community objected, the subject of which had never before been included in a TEA contract. *Id.,* ¶¶ 4, 40.

¶ 87. For the very reasons the majority concludes the June 1 notice was insufficient with respect to the TEA master contract, I conclude the notice was insufficient with respect to the new provision regarding the hiring of athletic coaches. Thus, it is incomprehensible

---

[4] Wis. Stat. § 19.85(1)(c).

that the majority would reject its own analysis when discussing the June 1 notice as it relates to the new provision for the hiring of coaches that is set forth in the TEA master contract. As to the coaches provision, the June 1 notice is still vague because it fails to discuss coaches or procedures to hire coaches at all, and could cover any negotiations with any group of district personnel or with any individual employee within the district. Moreover, the June 1 notice was still misleading as to the coaches provision, as Wis. Stat. § 19.85(1)(c) once again provides for closed sessions for individual employees, and not for considering new hiring provisions for athletic coaches in general. The majority inadequately explains how an insufficient notice as to a public meeting regarding the TEA master contract is sufficient with respect to an item buried within that very contract, particularly when the item in question has never before been the subject of contract . negotiations and was of special interest to the public.

¶ 88. When applying the factors associated with the reasonableness standard, the majority concedes that the second and third factors[5] weigh in favor of requiring notice that the Board would address the coaches provision. Majority op., ¶ 43. Thus, the majority's analysis stands on the first factor, the burden of providing greater information. Yet, just what was the burden? Once again, a few words in the notice would

---

[5] These factors, again, include whether the subject is of particular interest, and whether it involves non-routine action that the public would be unlikely to anticipate. The public had already shown great interest in the athletic coach hiring provision, and the June 1 notice contemplated employment negotiations for any of the individual employees within the district, but did not provide for general hiring procedures for athletic coaches.

have sufficed, simply by indicating that the procedure for hiring athletic coaches would be discussed. For a matter of considerable public concern, this was no "burden."

¶ 89. If, as the majority concludes, the June 1 notice was insufficient to apprise members of the public that the TEA master contract would be considered at the June 1 meeting, then it was necessarily insufficient to apprise members of the public that a new provision regarding the hiring of athletic coaches *contained within the TEA master contract* would be considered.

¶ 90. "[T]he notice requirement gives the public information about the business to be conducted that will alert them to the importance of the meeting, so that they can make an informed decision whether to attend." Majority op., ¶ 26 (citing *State ex rel. Badke v. Village Bd. of the Village of Greendale,* 173 Wis. 2d 553, 573–74, 577–78, 494 N.W.2d 408 (1993)). I wholeheartedly concur. Yet, no informed decision to attend was possible here, as the notice failed to give the public any idea of what would be discussed at the meeting. The June 1 notice (1) fails to inform the public that the TEA master contract will be considered, and (2) fails to inform the public that a new hiring procedure for athletic coaches will be discussed. Accordingly, I would reverse the court of appeals as to both of these issues.

¶ 91. For the foregoing reasons, I respectfully concur in part and dissent in part from the court's decision and mandate.